NEW ENGLAND LOAN & TRUST COMPANY, Appellant,
v. J. R. YOUNG, Treasurer, *et al.*, Appellees.

**Taxes on Personal Property :** LIEN ON REAL ESTATE : PRIORITY OF
LIENS. Taxes levied upon personal property subsequent to the
foreclosure of a mortgage against real estate owned by the tax-
payer, and to the sale thereof under special execution, but while
the right of redemption remains in the taxpayer, become, under
the provisions of Code, section 865, a lien upon such mortgaged
real estate, which is entitled to priority over the rights of the
purchaser at the foreclosure sale.     [ GRANGER and ROBINSON, JJ.,
*dissenting.*]

. *Appeal from     Union District Court.*—HON. JNO. W.
HARVEY, Judge.

MONDAY, JUNE 27, 1890.

THIS is an action in equity to restrain the defend-
ant, who is treasurer of Union county, from proceeding
to collect certain taxes by the sale of real estate, claimed
to be owned by the plaintiff. There was a decree for
the defendant, and plaintiff appeals.

*E. D. Samson*, for appellant: Section 865 of the
Code of Iowa provides that taxes upon real estate shall
be a perpetual lien thereon against all persons except
the United States and the state of Iowa, but taxes upon
personalty are made by that section only a lien upon
any real property owned by such person, or to which
he may thereafter acquire title.. The order of priority
of lien is not fixed, nor is any attempt made to fix it in
the statute. This must mean that taxes upon per-
sonalty are a lien upon the interest of the taxpayer in
the realty, and can mean nothing more. It is against
public policy to require purchasers and mortgagees of
property to be subjected to contingencies which it is
impossible to avoid or provide against. *Cummings v.
Easton*, 46 Iowa, 185, 186. Taxes upon personalty do

not become a lien upon the realty of the taxpayer until they are due, or at least not until they are levied. *Castle v. Anderson*, 69 Iowa, 429, 430. In the case now before the court, the right of the plaintiff as mortgagee attached in June, 1886. The plaintiff, on April 23, 1887, became a purchaser at sheriff's sale of the premises, under foreclosure of this mortgage, and the amount of the bid was determined with respect to such liens only as then existed. The tax upon personalty for 1887 had not at the time of the execution of the said mortgage in June, 1886, nor at the time of the purchase of said premises at sheriff's sale on April 23, 1887, been levied, nor had they become due, and under the case of *Castle v. Anderson*, above cited, the lien for such personal taxes had not, at either of said dates, attached. The lien of the said taxes, when they became due, certainly did attach to whatever interest the defendant Syp had in the said premises, but what was such right? It was the right only to make redemption of the premises from sheriff's sale within the time allowed by law therefor. Upon a failure to exercise such right, all of his interest in the premises would, by mere lapse of time, and within a year from April 23, 1887, expire and be absolutely gone. It was not the intention that the conveyance to the plaintiff should effect a merger of plaintiff's lien under the sheriff's certificate in the legal title. The principle is now well settled that, in case of conveyance of the legal title to realty to one who holds the lien thereon, a merger will not result if it is to the interest of the lienholder and grantee that the fact should be otherwise. *Linscott v. Lamart*, 46 Iowa, 314, 315, and *Delaware Construction Co. v. Railway Co.*, 46 Iowa, 411, 412.

*Enoch & Winter*, for appellee: On the tenth day of February, 1888, W. K. Syp and wife executed a deed to the appellant, conveying the lands described in their mortgage, and the foreclosure decree. By this deed the appellant, the then holder of the sheriff's certificate

under foreclosure decree, became then the absolute
owner of all the lands sold on foreclosure decree. At
this time the personal tax of the said W. K. Syp was
due, carried on the treasurer's books of Union county,
Iowa, opposite his name, against said lands, and was a
lien on the face. Taxes on personal property become a
lien on real property owned by the person owing such
tax as soon as the same becomes due, which would be
when they were placed in the treasurer's hands for col-
lection, and he had an opportunity to pay them, which
would be in this case on January 1, 1888. *Paulson v.
Rule*, 49 Iowa, 576 ; *Garretson v. Scofield*, 44 Iowa, 35 ;
*Cummings v. Easton*, 46 Iowa, 183. As appellant took
Syp's interest in the lands charged with the tax in
question, by conveyance from Syp, subsequent to the
attaching of the lien, they took it subject to the lien,
and they cannot now be heard to dispute the right of
the treasurer to collect said tax by the sale of said
lands.

*E. D. Samson* with *Kauffman & Guernsey*, upon
rehearing : The deed to the plaintiff cuts no figure
whatever in this case, for plaintiff's rights depend, not
upon the relinquishment, but upon its lien under, and
by virtue of, the mortgage, and of the certificate of sale
under the foreclosure, and the sheriff's deed issued to
plaintiff thereon. *First*, let it be noted that taxes are
not a lien at common law upon the property of the tax-
payer. The lien for taxes exists only by legislation.
If there were no legislation in the state upon the sub-
ject no taxes levied in the state would constitute a lien
upon any property whatsoever. *Jaffray v. Anderson*,
66 Iowa, 719. Looking now to the statute, it will be
seen ( Code, sec. 865 ) that a marked distinction is made
between taxes upon realty and those upon personalty,
so far as relates to the lien thereof upon real estate. It
will be noted that while the taxes upon the realty itself
are made a paramount lien as against all persons, yet
such is not the case so far as concerns personal taxes.
A careful reading of this statute will make it impossible

for it to be so construed as to give personal taxes prior-
ity over liens which had attached to the premises prior
to the time when the personal taxes became liens.    The
rule is that statutes which give liens for taxes are not
to be enlarged by construction.    Cooley on Taxation
[2 Ed.] 444.    A mortgagee is, to the extent of his
investment, entitled to as favorable consideration, and
as high protection, as a purchaser of the mortgaged
premises, as a vendee of the same would be under like
circumstances.    *Barney v. McCarty*, 15 Iowa, 514;
*Porter v. Greene*, 4 Iowa, 571; *Hewitt v. Rankin*, 41
Iowa, 35; *Koon v. Trammel*, 71 Iowa, 137.    The pur-
chaser at an execution sale of premises is protected
under the decisions of this court against all outstanding
equities in favor of third parties, and all claims against
the execution defendant to the same extent as would be
a purchaser of the premises at private sale from the
debtor himself.    *Gower v. Doheny*, 33 Iowa, 36; *But-
terfield v. Walsh*, 36 Iowa, 534.    If appellant had pur-
chased the property of this taxpayer at the time of
taking its mortgage, it would have been protected under
the rule in *Castle v. Anderson*, 69 Iowa, 429; *Cum-
mings v. Easton*, 46 Iowa, 183.    In the case of *Par-
sons v. Gaslight & Coke Co.*, 108 Ill. 380, the doctrine is
expressly held, that personal taxes cannot displace a
prior trust deed.    The same doctrine is held in Pennsyl-
vania, *Gormley's Appeal*, 27 Penn. St. 49; and in
New Jersey, *Macknet v. The City of Newark*, 42 N. J.
Law Rep. 38.

ROTHROCK, J.—The cause was submitted to the
court below upon an agreed statement of facts.    It
involves less than one hundred dollars, and the certifi-
cate of the trial judge, which is the basis of the appeal,
shows the following facts in substance :   In June, 1886,
one W. K. Syp executed to the plaintiff a mortgage
upon certain real estate to secure the payment of ten
thousand dollars and interest.    Syp failed to pay the
interest which became due January 1, 1887, and, at
the March term, 1887, of the district court, plaintiff

recovered a judgment against Syp for the overdue interest, and a decree of foreclosure of the mortgage, subject to the rights of plaintiff's assignee, for the remainder of said indebtedness. The premises were sold at foreclosure sale on the twenty-third day of April, 1887, the plaintiff being the purchaser at the sale, and a certificate of purchase was issued to the plaintiff. On the tenth day of February, 1888, Syp conveyed his right of redemption to said premises. The deed contained the following recitals :

"The grantors herein are to be released from personal liability for the payment of the mortgage upon the said premises for the sum of ten thousand dollars to the grantee herein, dated June 22, 1886. We hereby covenant with the said New England Loan & Trust Company that we have not heretofore conveyed our interest in the said premises to anyone. The object of this deed is to make more effectual the lien of said company against the said premises by virtue of the sheriff's certificate of sale which they hold against the same."

Taxes to the amount of seventy-five dollars upon the personal property of Syp were levied for the year 1887, and were entered upon the tax books against said real estate. The question to be determined is, do the taxes for 1887 upon the personal property of Syp constitute a lien upon the land, which may be enforced by tax sale, and, if so, is such lien superior or inferior to plaintiff's lien under said foreclosure decree and sale? The district court held that the taxes were a valid lien upon the land superior to any lien or claim of the plaintiff. If the taxes had become a lien prior to the foreclosure and sale, there can be no question that they would be prior and superior to the mortgage lien. It is a general principle that when taxes are made a lien upon real estate they are prior and superior to all mortgage or judgment liens. A mortgagee of real estate would not cut much of a figure in attempting to defeat a tax sale of the land upon the grounds that his mortgage was a lien prior to the taxes, and that his lien

exceeded the value of the land. But plaintiff contends that, as this tax did not become a lien until after the sale on foreclosure, Syp had nothing to sell but his right of redemption, and that as he was not then the owner of the land the taxes are not a lien as against plaintiff. It will be observed that the taxes became a lien after the sale and during the period allowed by law for redemption. We are unable to see that this affects the rights of the parties. The mortgagor was not divested of the property by the foreclosure sale ; he held the title, and the right of possession remained in him until the period of redemption expired. He was the owner of the land within the meaning of section 865 of the Code, which, by its express provision, makes the personal tax a lien upon the premises.

The fact that he conveyed the land to the plaintiff after the tax became a lien cannot affect the question. Plaintiff could not defeat the lien for taxes under any form of conveyance taken from Syp.

We think the court did not err in finding that the taxes were a lien upon the land. AFFIRMED.

### UPON REHEARING.

GIVEN, J.—I. This case was submitted at a former term, and an opinion rendered affirming the decree of the district court. In view of the nature and importance of the questions involved, a rehearing was granted, and the case has again been carefully considered. It is an action in equity to restrain the defendant, who is treasurer of Union county, from proceeding to collect certain taxes on the personal property of one Syp, by the sale of real estate claimed to be owned by appellant. There was a decree for the defendant, and plaintiff appeals. The case involves less than one hundred dollars, and the certificate of the trial judge shows the following facts: In June, 1886, one W. K. Syp executed to appellant a mortgage upon certain real estate in Union county, to secure the payment of ten thousand dollars and interest. Syp failing to pay the interest,

which became due January 1, 1887, at the March term, 1887, of the district court, appellant recovered judgment against Syp for the overdue interest, and a decree of foreclosure of the mortgage. The premises were sold at foreclosure sale on the twenty-third day of April, 1887, to appellant, and a certificate of· purchase issued. On the tenth day of February, 1888, Syp conveyed his right of redemption to appellant,—the deed containing the following recitals: "The grantors herein are to be released from personal liability for the payment of the mortgage upon the said premises, for the sum of ten thousand dollars to the grantee therein, dated June 22, 1886. The object of this deed is to make more effectual the lien of said company against the said premises by virtue of the sheriff's certificate of sale, which they hold against the same." Taxes to the amount of seventy-five dollars upon the personal property of Syp were levied.for the year 1887, and entered upon the tax books against said real estate. The questions to be determined are, whether the taxes upon the personal property of Syp for the year 1887 became a lien upon the real estate, and, if so, whether such lien is superior to appellant's lien under the mortgage foreclosure, decree and sale.

The general rule is that taxes are not a lien unless expressly made so by statute, and, when created, the lien is not to be enlarged by construction. Cooley, Taxation, 444; *Jaffray v. Anderson*, 66 Iowa, 719. Turning to section 865 of the Code, we see that "taxes due from any person upon personal property shall be a lien upon any real property owned by such person, or to which he may acquire title." This lien is upon the real property, not upon any particular interest in it. It is upon any real property owned by the person against whom the tax has become due. The lien attaches when the tax becomes due, which for the purposes of this case may be taken as January 1, 1888 ; without now determining whether such taxes became due at the time of the levy, or when the books are placed in the hands of the treasurer. *Castle, Trustee, v. Anderson*, 69 Iowa,

428. The statute has plainly created a lien for this tax upon any real property owned by Syp at the time the tax became due, and our inquiry is not whether a lien should be created or enlarged, but whether, on January 1, 1888, Mr. Syp was the owner of the real property described. The ownership was not extinct nor suspended,—it existed either in Syp or the appellant. Under the modern rule, appellant, as mortgagee, was merely the holder of a lien, which continued so long as the mortgagor had the right to extinguish it by payment. The decree and sale did not terminate that right. Under the law, the time of the sale merely determined the time when that right would be cut off. The relations of the parties to the property were not changed by the sale, except that the costs were added to the indebtedness, and the time within which Syp might extinguish the lien changed. Certainly appellant was not the owner of the property in such sense as that taxes on personal property due from him would become a lien upon the property before title was acquired, by the expiration of the right to redeem. Mortgaged property is not subject to lien for taxes on personal property due from the mortgagee, because, as mortgagee, he is not the owner, but a mere lienholder. On January 1, 1888, Syp held the legal title, subject only to the lien of the decree and sale, which he had a right to remove by payment at any time before April 23, 1888. It is not to property held by absolute ownership that the lien attaches, but to real property owned. This real property was owned by Syp when the taxes against him became due, and, therefore, under the statute those taxes became a lien upon that real property. To hold otherwise would deny to the state a lien expressly created by statute. As this question of ownership rests entirely upon the facts as they existed January 1, 1888, the deed thereafter made by Syp to appellant is immaterial.

II. Upon the question as to the superiority of these liens, it is urged that the statutes do not expressly declare the lien for taxes on personal property superior

to other liens previously acquired. That to hold it superior is to enlarge the lien and impair real-estate securities, discourage sales on time, and, in effect, take the property of one person to pay the taxes of another. The lien is upon real estate, and not upon any particular interest therein. It is not a mere personal claim against the owner, but a charge upon the land. *Garretson v. Scofield*, 44 Iowa, 37. It is a general principle in our system of taxation that, when taxes are made a lien upon real estate, they become prior and superior to all mortgage or judgment liens. Were it otherwise, the state in the collection of her revenues would be placed in the attitude of a junior lienholder, and forced to redeem from prior liens, or be defeated in the collection of her taxes. The power of taxation is an incident of sovereignty, and the exercise of that power cannot be defeated by asserting superiority for the claims of individuals. The statute is silent as to any authority to redeem on behalf of the state, and the slightest reflection will show how entirely impracticable it would be to pursue such a course in the collection of taxes. The statute creates the lien against the land, and it is no enlargement of it to say that the land is held for its payment in preference to all other liens. It is sufficient answer to all that is said as to the effect that such a holding will have upon real-estate securities and transactions to say, that it is entirely within the power of those taking such securities to protect themselves. They take their securities knowing that personal-property tax may become a lien upon the property pledged, and that the state cannot be embarrassed in the collection of its revenue by being put in the position of a junior lienholder. It is a matter of common observation that mortgages are generally taken with sufficient margin, and ample provisions, to protect the mortgagee against the consequence of liens for taxes on personal property. We fail to discern wherein the holding of this property liable to the personal tax of Mr. Syp is taking the property of appellant to pay Mr. Syp's taxes. It was not the appellant's property at the time the lien

attached.    We cannot concur in the conclusions of the courts, as announced in *Macknet v. Newark*, 42 N. J. Law, 45, and *Parsons v. Gaslight & Coke Co.*, 108 Ill. 384, cited by counsel. A careful review of the case, in the light of the additional arguments and citations, confirms us in the conclusion announced in the former opinion.

GRANGER, J. (*dissenting*).—The first division of the majority opinion determines that the personal property tax is a lien on the real estate, and of the correctness of that rule I make no question.    The second division deals with the question of priority of liens, and upon that question I dissent from the rule announced, and base my conclusion upon three propositions: *First*, that the rule announced does not reflect the letter or spirit of the statutes sought to be interpreted; *second*, that it is opposed to natural justice; and, *third*, that it contravenes every authority known to us on the subject.    The propositions will be briefly noticed in the order stated.

As the main reliance is now placed on the opinion filed on rehearing, my references will be, mainly, if not entirely, to the reasoning in that opinion.    It is there stated that "the general rule is that taxes are not a lien unless expressly so made by statute, and when created the lien is not to be enlarged by construction."    That rule is acceptable, and is to be kept in view, for, in my judgment, its teaching is forgotten in the reasoning of the opinion.    The opinion quotes but a portion of the statute essential to a correct conclusion.    I quote as follows, inclusive of that quoted by the majority:    "Taxes upon real property are hereby made a perpetual lien thereon against all persons except the United States and this state, *and taxes due from any person upon personal property shall be a lien upon any real estate owned by such person, or to which he may acquire title.*"    The italicized portion is that quoted in the other opinion.    I first inquire if there is anything in the italicized portion, taken alone, that should make such a lien paramount to one formerly

acquired. The language does nothing more than create a lien. It makes no reference whatever as to priority, or against whom it is a lien. Now, I must assume that the rule is that liens take priority in the order of their becoming liens, and, when they do not, it is the result of an exception and not of the general rule. Divest the case of the consideration as to public revenues, and apply it as between persons, and a court could not be found to give priority to the lien latest in point of time. The holding in this case comes, then, from a supposed necessity of aiding the public revenue, and that is the reasoning of the opinion. It is entirely from construction, then, that the taxes became a prior lien, for the other lien was certainly, in fact, prior. What have we done, then, less than to "enlarge by construction" the lien given by the statute, and in violation of the very rule announced in the opinion?

But I think a greater mistake is in leaving the other part of the section without consideration in determining the question before us. We are told on authority that "it is the most natural and genuine exposition of a statute to construe one part by another part of the same statute, for that best expresses the meaning of the makers." Let us apply the rule to this case. It will be observed that the legislature, in creating the statute in question, was not only providing that taxes should become a lien upon property, but also against whom the lien should exist; and, with that in view, it enacted as to real property that taxes thereon should be "a perpetual lien thereon against all persons except the United States and this state." That language is unmistakable, and makes the lien against all persons, and is the kind of language the legislature selected to express such an intent. If it intended the same as to taxes on personal property, would it not, in reason, have employed the same or equally specific language? As to real property, it not only prescribed the lien, but those against whom it should exist, "all persons." As to personal property, it

prescribed the lien, but not that it was against all persons, and left it to be governed by the general rule as to priority. What the legislature seemingly declined to do, this court has done by construction, and made the lien alike as to both classes of property. I say with much confidence that the different language used as to the two classes of property is indicative of a different legislative intent, and that intent should be the guiding star of interpretation.

I base the proposition that the construction is against natural justice on the fact that, as a result, the property of one person may and is likely in some instances to be taken to pay the taxes or obligations of another, and any law enacted with such a purpose in view would meet with general condemnation. Let us suppose that A is the owner of forty acres of land of the value of one thousand dollars, which he sells to B, and takes back a mortgage to secure two-thirds of the purchase price. Such occurrences are usual. It is true, also, that there are persons in Iowa whose unpaid personal-property taxes will aggregate large amounts,—we may say one thousand dollars or more. I will designate C as one of them. B transfers the title of the forty acres of land to C. C has now acquired the title, and the taxes without question become a lien. The majority opinion makes them a paramount lien, and nearly seven hundred dollars of A's money or property is taken to pay the debt of C. It is said by the majority opinion that " it is entirely within the power of those taking such securities to protect themselves." I fail to see how, unless A shall refuse to sell his land upon credit. If the opinion has especial reference to those who loan money, I fail to see how they are able to do so. Conceding, for argument, that they might reasonably do so, as to the mortgagor, it does not follow that the title might not be conveyed until it would rest with one whose unpaid taxes would impair, if not destroy, the security. It is not an answer to say that such instances would be rare. Such a law

could have no vindication against a single instance of such injustice. While extreme cases might be unusual, those of lesser magnitude would likely be frequent. I think the effect of the majority opinion is broader and deeper than has been anticipated, and is likely, with ill effect, to visit all classes of people. The public demands for the collection of revenues are urged in support of the construction. Conceding all that the public good requires in that respect, and I must deny that there is one consideration of a public nature in support of so unjust a rule. It is said in the opinion that "it is a general principle in our system of taxation, that, when taxes are made a lien upon real estate, they become prior and superior to all mortgage or judgment liens." If that statement is made with reference to taxes upon real estate, I do not question it. If made as applicable to the facts of this case, I am compelled to question its accuracy, and to insist that every adjudication upon such a state of facts known to this court announces a contrary doctrine ; and I am unable to find an instance where such a rule has recognition.

I have said that the rule announced contravenes every authority known to us on the subject. The supreme court of New Jersey, in construing a law equally favorable to the view of the majority, used this language: "An intention to give such a tax priority in any case should not be imputed to the law-makers in the absence of unmistakable language to that effect. While the law when it is clearly written must be enforced according to the letter, however harsh and impolitic it may appear to the judicial mind, in a case of real doubt and ambiguity, the consequences of a particular interpretation may be regarded. To declare that a mortgage on land shall be subsequent to all after taxes assessed on the personal estate of the owner of the equity of redemption differs but slightly from taking the property of one citizen to pay the debt of another. The injustice of such a proceeding would be so striking as to cast a doubt upon

the correctness of the interpretation which establishes such a rule." *Macknet v. Newark*, 42 N. J. Law, 45. I can add nothing to the significance of the language used. The statute of Illinois provides for making the taxes upon personal property a lien on real estate, but, as against a deed of trust made prior to the lien for the taxes, the latter was held subsequent to the deed. *Parsons v. Gaslight & Coke Co.*, 108 Ill. 380. Some importance is attached by the majority opinion to the fact that no provision is made for the state to redeem from prior liens. Such a fact does not aid the construction given, nor is such a redemption necessary. If the lien for the taxes is junior, the interest or equity of redemption of the tax debtor may be sold subject to the prior lien, which method absorbs all the debtor owns, and that is all any creditor, whether public or private, should in conscience demand. In my judgment the lien for taxes should be held junior to the mortgage.

ROBINSON, J., concurs in this dissent.