## STATE OF MINNESOTA v. CENTRAL TRUST CO. OF NEW YORK.

### (Circuit Court of Appeals, Eighth Circuit. April 10, 1899.)

### No. 1,133.

TAXATION—LIEN OF TAXES ON PERSONAL PROPERTY—MINNESOTA STATUTE.
   Under Gen. St. Minn. 1894, § 1623, which provides that "the taxes assessed upon personal property shall be a lien upon the personal property of the person assessed from and after the time the tax books are received by the county treasurer," the lien so created is paramount to any other lien upon the property, prior or subsequent, in favor of private parties.

Appeal from the Circuit Court of the United States for the District of Minnesota.

On July 13, 1897, the Central Trust Company, the appellee, which is a corporation of the state of New York, filed its bill in the circuit court of the United States for the district of Minnesota against the Duluth Gas & Water Company, a Minnesota corporation, hereafter termed the "Water Company," to foreclose a mortgage executed by the latter company on November 1, 1888, and recorded with the register of deeds for St. Louis county, Minn., on February 23, 1889, whereby the mortgagor company conveyed to said Central Trust Company all and singular the property, real, personal, and mixed, then owned and controlled by it, or that it might thereafter acquire, including its franchises, incomes, rents, works, contracts, buildings, machinery, mains, pipes, lines, poles, and property of every kind, in trust, to secure the payment of an issue of bonds to the amount of $5,000,000, of which sum bonds to the amount of $1,513,000 were subsequently issued. A decree of foreclosure was entered in said cause in the usual form on October 13, 1897, the amount found due under the mortgage being $1,586,059.19. The decree provided that the mortgaged property, in default of payment of said sum within five days, should be sold after six weeks' notice of the sale. On December 29, 1897, the circuit court was advised by affidavits duly filed therein by the complainant that three judgments had been obtained against the Water Company in the district court for St. Louis county, state of Minnesota, where the mortgaged property was located, amounting in the aggregate to $37,088.30, which judgments were for taxes upon personal property that had been assessed against the Water Company for the years 1894, 1895, and 1896; that executions had been issued on said judgments; and that a levy had been made thereunder by the sheriff of St. Louis county on December 18, 1897, upon all the gas and water mains of the Water Company in the city of Duluth, the same being property which was included in the aforesaid mortgage. On the presentation of such affidavits, the circuit court enjoined the sheriff of St. Louis county from proceeding with the levies, and required him to release the same. It gave the state of Minnesota, however, leave to present its demand for unpaid taxes to the master who had been appointed to make the foreclosure sale, and empowered the master to hear and report upon the merits of said claim before there should be any distribution of the proceeds of the sale of the mortgaged property. On February 5, 1898, the master publicly sold the mortgaged property, pursuant to the decree of foreclosure, for the sum of $700,000, the sale being made subject to a prior mortgage lien to the amount of $295,000. This sale was afterwards reported and confirmed. In pursuance of the order empowering the master to hear and decide concerning the merits of the state's claim for unpaid personal taxes, which were alleged to be due from the Water Company, a hearing was had before the master, who reported with respect to said claim that although the aforesaid judgments for personal taxes had been recovered by the state against the Water Company, for the years 1894, 1895, and 1896, to the amount before stated, and that although personal taxes had been assessed against the Water Company for the year 1897 to the amount of $23,569, yet "that the state of Minnesota has, under the laws of the state and the rules and practice of this court, no lien upon the personal property of the Duluth Gas & Water Company, covered by and included in the mortgage or deed of trust in

this action foreclosed, paramount to the lien of the bondholders under said mortgage or deed of trust. And the said claim on the part of the state to have said personal taxes of said Duluth Gas & Water Company paid out of the funds * * * derived from said foreclosure sale of said mortgaged property, made under said judgment and decree of this court, is * * * disallowed." The state excepted to this report; but, upon the hearing of the exceptions, they were overruled, and the report was confirmed. The appeal by the state is from the aforesaid order.

J. B. Richards, for appellant.

Jed L. Washburn (Samuel Untemeyer, Charles L. Lewis, and William D. Bailey, on the brief), for appellee.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The laws of the state of Minnesota (Gen. St. 1894, § 1518) declare that:

"The personal property of gas and water companies shall be listed and assessed in the town or district where the principal works are located. Gas and water mains and pipes laid in roads, streets or alleys shall be held to be personal property."

Section 1623 of the same volume of the General Statutes provides that:

"The taxes assessed upon real property shall be a lien thereon from and including the first day of May in the year in which they are levied until the same are paid, but as between grantor and grantee such lien shall not attach until the first day of January of the next year thereafter. The taxes assessed upon personal property shall be a lien upon the personal property of the person assessed from and after the time the tax books are received by the county treasurer."

And section 1562 of the same volume provides, in substance, that the county auditor shall deliver the tax lists of the several districts into which a county is divided to the county treasurer on or before the first Monday in January in each year, and that such lists when received by the treasurer shall be sufficient authority to receive and collect the taxes specified therein. It thus appears that the lien for personal taxes which is provided for by section 1623, supra, takes effect on the first Monday in January succeeding the completion of the tax lists, that being the date on which the tax lists are usually delivered to the county treasurer. The method of assessing taxes in the state of Minnesota corresponds generally with the laws which prevail in other states, with which all are familiar, and need not be stated with particularity. Real property is listed every even-numbered year, and assessed with reference to its value on the 1st day of May preceding the assessment. Personal property is listed and assessed annually with reference to its value on the 1st day of May. Vide Gen. St. Minn. 1894, § 1514. All property is required to be assessed at its full and true value in money. The assessment is made during the months of May and June, and taxpayers are required to make a correct statement of their taxable property to the assessor, and, in case of a failure by the assessor to obtain such a statement, it is made his duty to ascertain

the amount of property liable to taxation, and to assess it at what he believes to be its true value. Vide Id. §§ 1536, 1541, 1542, 1546. When the assessment is completed by the assessor, it is returned to the county auditor, and the assessment is thereafter equalized and corrected by a board of equalization. The corrected tax list is subsequently delivered by the auditor to the county treasurer, as prescribed by Id. § 1562. Taxes on personal property are deemed delinquent on the 1st day of March next after they become due, and thereupon a penalty of 10 per cent. is attached. After taxes have been returned as delinquent, the county auditor is empowered to file a revised list of such delinquent taxes with the clerk of the district court of the county wherein the taxes were assessed, and after due notice of such proceedings said court is empowered to enter a judgment against the delinquent taxpayer for the amount of the tax assessed against him,.together with the penalty and costs. Vide Id. §§ 1567–1569.

It is contended in behalf of the appellee, and so the lower court appears to have held, that the lien created by the mortgage in favor of the Central Trust Company, from the time when that instrument was recorded, to wit, February 23, 1889, was and is paramount, so far as the personal property conveyed by the mortgage is concerned, to any lien thereon which the state can assert under a subsequent assessment of such personal property for taxation, and in accordance with that view it was held that the personal taxes due to the state of Minnesota from the Water Company for the years 1894, 1895, 1896, and 1897 could not be paid out of the proceeds of the foreclosure sale, the amount received at such sale being insufficient to discharge the mortgage indebtedness. It cannot be successfully denied that there are some adjudications which support the appellee's contention to the full extent last stated, one of such cases, and the only one which is directly in point, being Binkert v. Railway Co., 98 Ill. 205. In that case a tax had been assessed, pursuant to the laws of the state of Illinois, on the capital stock of a railway company, and an attempt was made some years after the assessment to enforce the collection thereof. By the laws of the state taxes on personalty were made a lien upon the personal property of the person assessed from and after the time when the tax books were delivered to the collector. It was held by a divided court that the tax thus imposed on the capital stock of the railway company, the same being a personal tax, was inferior to the lien of a mortgage which was executed and recorded before the tax book containing the tax was delivered to the collector. The reasons given for the ruling were, in brief, that the lien given by the statute for the taxes in question had no reference to the property which was originally assessed, but was a lien on such personal property as the taxpayer owned at the time of the delivery of the tax book to the collector; that the lien could not take effect before the time which was fixed by the statute; and that the tax book had no greater effect as a lien when delivered to the collector than an execution issued on a judgment recovered in a suit between private individuals. No reference, however, was

made in the opinion to a prior decision by the same court (Dunlap v. Gallatin Co., 15 Ill. 7, 9), wherein it was declared, in substance, with reference, it is true, to a tax on realty, that a tax levied by the state is not an ordinary debt, but that, being levied for the support of the government, it takes precedence of all other demands against the owner. In the state of Iowa taxes assessed on personal property are made a lien on real estate owned by the taxpayer, and in that state it was first held (Trust Co. v. Young, 81 Iowa, 732, 39 N. W. 116, and 46 N. W. 1103) that the lien for such a personal tax upon realty of the taxpayer was superior to the lien of a mortgage thereon which was executed before the personal tax became a lien, although the statute of the state was silent as to the relative merits of such liens. This decision was based mainly on the ground that, if the superiority of the tax lien was not upheld, the state would be relegated to the position of an ordinary junior lienholder, and would be compelled to redeem from prior liens to collect its taxes, and in many cases would be defeated in the collection of the same by reason of the existence of prior liens in favor of individuals. In a later case (Bibbins v. Clark, 90 Iowa, 230, 57 N. W. 884, and 59 N. W. 290) a majority of the then members of the supreme court of that state reached a different conclusion, holding with respect to a lien on realty for personal taxes that it is inferior to the lien of a mortgage executed before the tax was assessed or became a lien. To the same effect is a decision by the supreme court of South Dakota (Miller v. Anderson, 1 S. D. 539, 47 N. W. 957), and a decision by the court of appeals of Colorado (Gifford v. Callaway, 8 Colo. App. 359, 46 Pac. 626). In the case of Macknet v. City of Newark, 42 N. J. Law, 38, where a city charter made an assessment for taxes a lien on all lands of the taxpayer within the city, it was held that the lien for so much of the tax as was assessed on personal property was subject to the lien of a prior mortgage on the property of the taxpayer. The question whether the lien declared by the last clause of section 1623, supra, takes precedence of prior liens held by private persons on personalty of which the taxpayer is the owner when the tax lists are delivered to the county treasurer, or whether it is inferior to such liens, has never been considered by the supreme court of the state of Minnesota, and, in the absence of an adjudication by that court, we feel at liberty to express an independent judgment.

It has been held frequently that a tax lawfully imposed by the state on its citizens is not an ordinary debt, but is an obligation which by its very nature should be regarded as paramount to all other demands against the taxpayer, although the law imposing the tax does not in express terms declare such priority. And in some well-considered cases the same priority has been accorded to a tax, although the statute imposing it failed to provide in so many words that it should be a lien on the property of the taxpayer. Such decisions proceed on the theory that the maintenance of good government and the public welfare are to such an extent dependent upon the prompt collection of taxes that demands of that nature should take precedence of all claims founded upon private con-

tracts. Butler v. Baily, 2 Bay, 244, 249; Gledney v. Deavors, 8 Ga. 479, 481, 482; Dunlap v. Gallatin Co., 15 Ill. 7, 9; Parker v. Baxter, 2 Gray, 185; George v. Railway Co., 44 Fed. 117, 119; Central Trust Co. v. New York City & N. R. Co., 110 N. Y. 250, 257, 18 N. E. 92; Greeley v. Bank, 98 Mo. 458, 460, 11 S. W. 980; Eastman v. Thayer, 60 N. H. 408, 418; Jarvis v. Peck, 19 Wis. 74; Bank v. Billings, 4 Pet. 514, 562. These decisions also express a thought which is generally prevalent in the public mind that taxes levied by the state for its own support are founded upon a higher obligation than other demands. The fact has also been recognized from time immemorial that every sovereignty ought to be armed with the requisite power to enforce the collection of taxes without fail, and to compel the prompt payment of whatever imposts it sees fit to levy for its own support. In view of that necessity it has been a common practice to provide summary remedies for enforcing such demands, which have been upheld by the courts whenever assailed, although it is quite probable that some of the remedies so provided could not have been sustained as affording due process of law, if the proceedings had related to the collection of purely private debts. Murray's Lessee v. Improvement Co., 18 How. 272, 277, 280; Hersee v. Porter, 100 N. Y. 403, 409, 411, 3 N. E. 338; Sears v. Cottrell, 5 Mich. 251. In the case in hand it is not necessary to infer the existence of a lien for the taxes in controversy, because of the character of the indebtedness, as has been done in some cases, since the state statute has, in unmistakable language, given a lien therefor upon all the personal property of the taxpayer owned by him when the tax lists are received by the county treasurer. Moreover, it cannot be successfully asserted that, in view of the prior mortgage covering the property upon which the sheriff proposed to levy, it was not the personal property of the Water Company when the tax lists were received by the county treasurer, within the meaning of the statute, since, according to the modern view, a mortgagee has a mere lien on the property covered by his mortgage, and is not regarded as the owner thereof. Trust Co. v. Young, 81 Iowa, 732, 739, 39 N. W. 116, and 46 N. W. 1103. The sole question at issue, then, is whether the lien of the state should be regarded as inferior to that of the mortgagee because the legislature did not expressly declare that it should be paramount. In behalf of the appellee it is conceded, apparently, that if the taxes in question had been levied upon real property the lien would prevail over a prior incumbrance thereon, without any express legislative declaration to that effect, and so it has been held on several occasions. Parker v. Baxter, 2 Gray, 185; Eastman v. Thayer, 60 N. H. 408, and cases heretofore cited. This rule with respect to the lien for real taxes is said to be due, however, to the fact that such taxes are assessed originally against the very thing to which the lien applies, whereas personal taxes are assessed against the person, and that when, as in the case at bar, the statute gives a lien for personal taxes on personal property of the taxpayer owned at a certain time, it is not a lien upon the same property on account of which the assessment was levied, and is therefore a lien of less dignity. With reference to this distinction

between personal and real taxes, it is only necessary to say that, while it is doubtless true that in some cases personal property owned by the taxpayer when he is assessed for taxation is not identical with that which he owns when the lien attaches, yet we can perceive no reason why this fact should have any effect upon the paramount character of the lien imposed for personal taxes. The state has an undoubted power to create a lien for a personal tax on other property of the tax debtor than that which was assessed for the tax, and to make the same superior to all other liens. It will also be found, we think, that taxpayers generally retain the bulk of their personal property from the time when they are assessed for taxation until the tax becomes a lien, so that in the majority of cases the statute with which we are now dealing will impose a lien on the bulk of the same property on account of which the tax was assessed. But whether it will or will not have such effect must be deemed immaterial in considering the paramount nature of the lien.

It is manifest from a glance at the situation that if the view which prevailed in the lower court is approved, and the lien for the taxes in controversy is reduced to the grade of a lien created by private contract, no more serious obstacle could be interposed in the way of the collection of personal taxes in the state from whence this appeal comes. A large percentage of personal property in nearly every community is usually subject to liens which, in one form or another, have been created by the owners thereof, and, if these shall be held to be of the same dignity as the lien given by a public statute for taxes, the state and the political subdivisions thereof will doubtless lose a considerable portion of the revenues which would otherwise be derived from taxes assessed on personal property. In the present case personal property of great value was covered by a mortgage for a period of 10 years, on account of which the state will lose personal taxes, assessed during a period of 4 years, to the amount of about $60,000, if the contention of the appellee shall prevail. Besides, a construction of the statute which will make a tax lien subordinate to a private lien will afford a ready means of enabling those who are so disposed to avoid the payment of personal taxes altogether, and thereby afford additional ground for the complaint so frequently heard, because so much of the taxable wealth of the country escapes taxation. No state, so far as we are aware, has ever made provision for redeeming property on which it imposes taxes from prior liens in favor of individuals, in order to secure its own revenue therefrom; nor is it either expedient or desirable that laws of that nature should be enacted, and that the state, like an individual, should be compelled to indulge in a race of diligence to secure its taxes. If it is deemed best for any reason to make a lien for taxes which are imposed on personal property subordinate to private liens, then we perceive no reason why it would not be equally wise to exempt all mortgaged personal property from taxation. To counterbalance the evil results which would doubtless flow from such a construction of the statute as was approved by the trial court, the appellee suggests that much public inconvenience will

be occasioned by a contrary construction of the statute upholding the paramount character of a tax lien, since a large amount of personal property will be incumbered by a lien for taxes, which will prevent the free alienation of such property, and prove a great hindrance to business transactions. It is possible, of course, that some persons may be deterred from purchasing personal property through fear of an outstanding tax lien; but this fact will in itself prove a strong incentive to taxpayers to pay their taxes, and to do so with reasonable diligence. Upon the whole, we are satisfied that the public inconvenience resulting from this source will not be serious, and that in any event it is not of sufficient importance to sustain the appellee's contention.

In view of what has already been said, we are of opinion that it cannot be inferred that the lien for personal taxes declared by section 1623, supra, was intended to be subordinate to all prior private liens, because the legislature failed to say that it should be deemed paramount. On the contrary, considering the character of the obligation and the dignity usually accorded to such liens, in public estimation, and above all, considering the necessity which exists for giving them priority in order that the public revenues may be promptly and faithfully collected, we conclude that the inference should be that the lien was intended by the legislature to be superior to all liens, prior or subsequent, claimed by individuals, and that nothing should be allowed to overcome this inference but a plain expression of a different purpose found in the statute itself. In a very analogous case (Morey v. City of Duluth, 77 N. W. 829) the supreme court of Minnesota has recently acted strictly in accordance with the latter view, holding that a clause in a city charter authorizing an assessment to be made on lands for street improvements, and making the assessment a lien, but which did not declare the same to be paramount to prior incumbrances, must necessarily be regarded as superior to such incumbrances. It is also worthy of notice that in the mortgage under which the appellee claims it was careful to insert a provision binding the Water Company to pay and discharge each year "all taxes and assessments of every kind which may be lawfully levied and assessed upon all or any part of the franchises and property hereby conveyed, so as to keep the said property free and clear from any incumbrance by reason thereof." From this provision found in the mortgage it may be fairly inferred that the mortgage was taken with the understanding, on the part of the mortgagee, that the taxes thereafter assessed on the mortgaged property, whether real or personal, would be paramount to the claims of the bondholders. It results from these views that the order and decree of the circuit court from which the appeal was taken were erroneous. It is accordingly ordered that the same be reversed, and that the case be remanded to the circuit court, with directions to vacate the erroneous order, and in lieu thereof to enter an order directing the payment, out of the proceeds of the foreclosure sale, of the taxes imposed in favor of the state of Minnesota for the years 1894, 1895, and 1896. Inasmuch as the amount of the taxes assessed for the year 1897, which

claim has not as yet been reduced to judgment, is in dispute, and litigation appears to be pending in the state courts relative to the amount of the taxes for that year, the order with reference thereto will, be that, when the amount of said taxes for the year 1897 is definitely fixed and determined by the proceedings pending in the state court, the amount of such taxes be also paid out of the proceeds of the foreclosure sale, and that in the meantime funds adequate for that purpose be retained in the registry of the court.