THE FAJARDO SUGAR COMPANY OF PORTO RICO, Plaintiff and Appellant, *v.* MANUEL V. DOMENECH, TREASURER OF PUERTO RICO ET AL., Defendants and Appellees.

No. 5890.  Argued March 10, 1933.—Decided July 22, 1933.

*Jaime Sifre, Jr.,* and *H. Franceschi* for appellant.    *Charles E. Winter, Attorney General,* and *R. Cordovés Arana, Assistant Attorney General,* for appellees.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the Court.

This is a suit for injunction brought by the Fajardo Sugar Co. of Porto Rico, a corporation of this island, wherein demand is made for a judgment declaring that the Treasurer of Puerto Rico and the Collector of Internal Revenue of Naguabo are not entitled to attach and sell at public auction a certain property mortgaged in favor of the plaintiff for the collection of taxes owed by its owner, Arturo C. Bird & Co., *S. en C.,* and not due on the property, and for the issuance of a preliminary order in the meantime enjoining any step to sell.

In brief, the facts are as follows: Arturo C. Bird & Co., *S. en C.,* is the owner of a tract of land of 50 acres, situated in Naguabo, which is mortgaged to the Fajardo Sugar Co. to secure a debt of $2,500. On account of taxes due on personal property, Arturo C. Bird & Co. owes to the Public Treasury the sum of $786.97, and in order to collect the same the Collector of Internal Revenue of Naguabo attached the said land and announced the sale thereof at public auction. The taxes directly assessed on the land have been paid by the mortgage creditor.

The Fajardo Sugar Co. alleges that should the property be sold at public auction for the payment of said taxes, the title to be acquired by the execution purchaser would be free from mortgages or liens, the preferred rights of the plaintiff being thus prejudiced. It therefore maintains that the injunction is necessary.

The defendants demurred to the complaint on the ground that the court lacked jurisdiction to issue a writ of injunction to prevent the collection of taxes, and that the complaint did not state facts sufficient to constitute a cause of action. They answered substantially admitting the truth of the facts we have just summarized.

The case was finally decided by the court by rendering judgment against the plaintiff. The court held that the plaintiff had available the right to redeem the property granted to it by section 348 of the Political Code, or to pay the tax under protest and subsequently claim its refund in accordance with Act No. 8 of 1927 (Sess. Laws, p. 122), which remedies, in the opinion of the court, account for the express legal prohibition contained in the Injunction Act.

Feeling aggrieved by that judgment, the plaintiff took the present appeal. It assigns in its brief two errors as follows:

"1.—The lower court erred in rendering judgment dismissing the complaint, on the ground that it lacked power to proceed in the cause and to issue the writ of injunction sought.

"2.—The lower court erred in dismissing the complaint, thus enabling the defendants to proceed to sell the property for the collection of taxes assessed on the personal property of the owner thereof by way of distress, notwithstanding the mortgage lien which the plaintiff holds on said property, and which would thereby be impaired or totally destroyed."

On April 23, 1927, there was approved Act No. 26 (Sess. Laws, p. 166), to amend section 4 of the Injunction Act of 1906, and it was provided therein that: "An injunction cannot be granted... 7. To prevent the levying or collection of any tax levied by the laws of the United States or of Porto Rico."

The amendment is applicable to this suit, although the latter was commenced in the year 1924, as the hearing in the district court was not held until the year 1931, and the amendment has retroactive effect in accordance with the doc-

trine laid down by the United States Supreme Court in the case of *Smallwood* v. *Gallardo*, 275 U. S. 56, thus:

"To 'maintain' a suit is to uphold, continue on foot and keep from collapse a suit already begun.

"There is no vested right to an injunction against illegal taxes, and bringing a bill does not create one.

"In the Act of March 4, 1927, amending the Act to provide a civil government for Porto Rico, the provision that no suit for the purpose of restraining the assessment or collection of any tax imposed by the laws of Porto Rico shall be maintained in the District Court of the United States for Porto Rico, applies to suits which were decided in the District Court and Circuit Court of Appeals before the date of the Act and afterwards brought here by certiorari, and makes necessary that the decrees, which dismissed the bills on the merits, be reversed with directions to dismiss for want of jurisdiction."

And since there is no controversy as to the fact that the tax collected was owed by Arturo C. Bird & Co. and was levied by the People of Puerto Rico, we would not have to add anything in order to conclude that the judgment appealed from must be affirmed.

However, there is involved in this suit such an interesting question, and one which has been so extensively and carefully argued by the appellant in its brief, that we shall not end our opinion without discussing it.

This is not the case where a property is attached and sold for taxes burdening the property itself. It is the case of personal taxes owed to the Public Treasury. Can real property of the debtor be attached and sold for the collection thereof? It can, according to the express provisions of section 339 of the Political Code, as follows:

"If the personal property of any delinquent tax-payer shall be insufficient to pay the taxes, penalties and costs, owing by him to The People of Porto Rico, or if he shall have no personal property subject to attachment and sale, the collector of the district within which such tax-payer resides, or agent, shall notify the treasurer of such facts, and any time after the receipt of such notification the Treasurer shall order the collector or agent to attach and sell enough

of the real property of such delinquent tax-payer to pay said taxes, penalties and costs.''

What will happen if the real property attached is mortgaged? We repeat that we are not dealing here with taxes assessed on the attached property itself, a case for which express provision is made in section 315 of the Political Code, but with the attachment or real property to collect other taxes owed by its owner.

The question does not seem to have been specifically determined by the Revenue Act itself; but in 1906, when considering said act in connection with the Civil Code, in *Estate of Romero* v. *Willoughby, Treasurer of Puerto Rico,* 10 P.R.R. 71, 74–77, this court speaking through Mr. Chief Justice Quiñones said:

"Now then, in view of the manner in which the question at issue in these proceedings has been presented, it is reduced to a determination of whether the tax imposed on the personal property of a taxpayer does or does not constitute a lien upon the real property of the same taxpayer, which can be enforced against such real property even after it has passed under a legal title to the ownership of a third person.

"There can be no doubt of the fact that taxpayers are liable to the extent of all their property without distinction for the payment of the taxes which may have been assessed against them, in view of the provisions of section 336 and 339 of the Political Code, according to which when all the taxes owed by a delinquent taxpayer have been computed, and compulsory proceedings have been instituted against him for the collection thereof, his personal property shall be proceeded against first, and if he should not have any personal property, or it should not be sufficient to cover the debt, then enough of the real property of the delinquent taxpayer shall be attached and sold to pay his indebtedness. Of this, therefore, there can be absolutely no doubt. But after the real property has left the possession of the debtor and come into the hands of a third person who acquired it under a legal title, will such property continue to be liable for the payment of the taxes assessed against the debtor in the same way as if it had not left his possession?

"With regard to the tax assessed against said real property, it is clear that it does because, according to section 315 of the Political

Code, the tax assessed against said real property of the taxpayer constitutes a lien which in legal terminology signifies a real encumbrance of said property whoever may be the possessor thereof.

"Section 315 of the Political Code, as amended by the Act of the Legislative Assembly of this Island of March 10, 1904, reads as follows:

" 'It will be the duty of the assessor in making the assessment, or in revising the existing assessment, to list each piece or parcel of real estate separately, and to give for each its assessed value, together with a description of it and the name and address of its owner in so far as such information can be obtained. Where the real property embraces both land and improvements, the assessed value of the land and the improvements must be given separately. The tax that is assessed against each piece or parcel of real property, including any improvements that may be thereon, or that may be subsequently placed there, shall constitute the first lien thereon, and shall be prior to all other liens whatsoever on said property, whether the said liens attach before or after the lien of said taxes.'

"In this the Political Code does nothing more than reproduce substantially the provisions of articles 168 and 218 of the Mortgage Law in force in this Island, the first of which grants an implied legal mortgage in favor of the State, the provinces or towns, now in favor of The People of Porto Rico, upon the property of taxpayers, for the amount of an annual tax thereon which has fallen due and which has not been paid; and the second—that is, article 218—provides that the State, province or towns shall be preferred to any other creditor in the recovery of one year's taxes on the realty. These provisions are also reproduced by section 1824 of the new Civil Code, which agrees in every respect with article 1923 of the former Code, which provides, with regard to determined real property and property rights of the debtor, that credits in favor of The People of Puerto Rico, with regard to the property of taxpayers, for the amounts of the last annual assessments, due and not paid, which burden the same, shall be preferred in the first place.

"There is no doubt, therefore, nor does anyone maintain the contrary in these proceedings, that according to section 315 of the Political Code and the other legal provisions cited, the tax assessed against the real property of a taxpayer constitutes a real charge, or lien on such property, whoever may be the possessor thereof; but the same cannot be maintained with respect to the tax assessed against the personal property of the taxpayer. With regard to such tax on personal property, neither section 315 of the Political Code, nor any

other section of said Code, gives it the character of a charge or lien on the real property of the taxpayer to the extent of permitting collectors of revenues to proceed against it after such real property shall have passed from the possession of the debtor to the ownership of a third person; and this being so, it is evident that revenue agents cannot attach such real property to enforce a liability which the law does not impose thereon, upon the universally acknowledged principle of law that property is considered free until it shall appear that it has been encumbered by the law or by some other legal title.

"The position of the Treasury of Porto Rico, with respect to the tax assessed against the personal property of the taxpayer, becomes the same as that of a personal creditor only, without any mortgage or lien whatsoever on the real property of the debtor, permitting it to proceed against it, after it has left his possession, for the recovery upon such property of the credit referred to, although it does have the prior right granted it by section 1825 of the new Civil Code, which agrees with article 1924 of the old Code, upon the personal and real property of the debtor not specially subject to other preferred liabilities, such as those established on certain real property and property rights of the debtor referred to in the first subdivision of section 1824 of said Code, and those comprised in the preceding section of the same Code, section 1823, on specified personal property of the debtor, which enjoy absolute preference over all other creditors."

In the case of Estate of Romero, *supra,* the attached property had already ceased to be the property of the delinquent taxpayer; hence it was declared that the attachment could not be levied. In the instant case, the property still belongs to the debtor, but it is mortgaged. It can be attached and sold without prejudice to the preferred liens legally constituted upon it. Such is the construction of the law which seems logical to us and which makes it possible to acknowledge and harmonize all the interests involved. It is supported by the decisions. Among the many cases invoked by the appellant in its brief, we shall only cite *Bibbins* v. *Clark,* 29 L.R.A. 278, 282–286. There the Supreme Court of Iowa said:

"Taxes become liens by virtue of statute only, and, when created, the lien is not to be enlarged by judicial construction. Cooley, **Taxn.**

444; Desty, Taxn. p. 734; *Jaffray* v. *Anderson*, 66 Iowa, 719; *New England Loan & T. Co.* v. *Young*, 81 Iowa, 738, 10 L.R.A. 478. Now, our statute does not provide, either expressly or by implication, that taxes due upon personal property shall be a lien upon real estate owned by such person, superior to any lien then existing thereon. It simply says, as to such taxes, they shall be a lien upon any real estate he owns, or which he may afterwards acquire. To hold that a mere statutory creation of a lien upon real estate, without more, is equivalent to, and to be construed as, creating a lien superior to existing liens thereon, is, as it seems to us, not only overriding all rules of construction, but it is inconsistent with our holding in the construction of other statutes where similar language is employed. . . An examination of our statutes will show that when the legislature has intended to create a lien which should take precedence of existing liens, apt language has been used to express such intention. See Code, sec. 1558, and chapter 100, Acts 16th Gen. Assem. The section under consideration makes a clear distinction between liens upon real estate for taxes assessed thereon and liens upon real estate for taxes assessed upon personal property. In the former case the lien is 'against all persons,' and 'perpetual;' in the latter it is simply declared that there shall be a lien. Now, in the opinion referred to this language of the statute is so enlarged by construction that in effect the statute is made to say that this lien upon real estate for personal taxes shall be superior to all other liens then existing against said real estate. The statute does not say so, the legislature has not so declared, nor can any such result be reached by applying to this provision of the statute the same rule of construction applied to like language used elsewhere in the code. Why should a special rule of construction be created for this particular statute? What reason is there for saying that this provision, simply creating a lien, means more than it says. In the *Young Case* it is said in the majority opinion: 'It is a general principle in our system of taxation that when taxes are made a lien upon real estate they become prior and superior to all mortgage or judgment liens.' As to taxes assessed against personalty and by statute made a lien upon realty, without provisions for priority, the above statement, in our judgment, finds no support in the authorities. Touching this question, the supreme court of South Dakota, in the recent case of *Miller* v. *Anderson*, 1 S. Dak. 539, 11 L.R.A. 317, said: 'But reading the entire section 1612 together, it is inexplicable to us why, if the legislature intended to put both real and personal taxes on a common footing, and make them both liens to the same extent and of the same rank, they should not have used terms

at least suggestive of such intent. If by force of a general principle, as stated in the majority opinion of the supreme court of Iowa, hereinafter referred to, the lien declared was necessarily a first one, why was it not as safe to rely upon that principle in the case of real estate taxes as in the case of personal property taxes? As to the former, they were careful to state that the lien was "against all persons;" thus definitely fixing its rank as a lien; and then, in direct contradistinction as to personal property taxes, they provide that they shall simply be a lien. Gathering the meaning and intent of this act from its language, (and this is a primary rule of construction), we conclude that that part of said section 1612 which relates to personal property taxes gives a lien for the same to the tax creditor from the time they became due upon any real property then owned or subsequently acquired by the tax debtor, subject, however, as in case of other liens created by law, to general statutes governing questions of priority or rank.' A majority of the court as now constituted is in full accord with the views expressed by Mr. Justice Granger in his dissenting opinion in the *Young Case*. The writer has given this question a careful investigation, and is convinced that the rule of the majority opinion in the *Young Case* is wrong, and that by it the letter and spirit of the statute is unwarrantably extended by judicial construction, to the great detriment of other lien holders, and an effect given to that part of the statute never contemplated by the legislature. All the statute provides as to personal tax being a lien upon real estate is that it shall be a lien, and as such it must be held to come within the general rule that its priority is to be determined as of the time the lien attached. In view of the very full discussion of this question in the *Young Case* we need not say more. The mortgage of plaintiff, having attached to the lots prior to the time the taxes on the personalty became a lien thereon, must be held to be superior to the tax lien. The case of *New England Loan & T. Co.* v. *Young,* heretofore referred to, in so far as it holds that taxes assessed against personal property, and which become a lien upon real estate, are a lien thereon prior and superior to existing liens thereon, must be and is overruled."

The appellant insists that the difficulty lies in that the sale of the property at public auction for the collection of taxes is made, according to law, free from encumbrances; a fact which would necessarily prejudice its mortgage. It cites *Márquez* v. *Registrar of Property,* 11 P.R.R. 257.

548

The case of Márquez, *supra,* refers to the sale of a property for taxes due on the property itself. Here it is not yet known what the collector would do in selling. The appellees themselves state in their brief: "We do not argue, but on the contrary admit, that our statute does not create a lien for personal taxes on the real property of the taxpayer."

But even though the collector were to issue his certificate stating that the property involved was sold free from encumbrances, if in truth there existed former liens duly constituted, which had priority and could not be destroyed under the law, the registrar, when recording the certificate, could refuse to cancel the same; or the person in whose favor they were constituted could enforce them despite the certificate.

The judgment appealed from must be affirmed.

Mr. Justice Wolf dissented.