[No. 19466.  In Bank.—October 7, 1897.]

CALIFORNIA LOAN AND TRUST COMPANY, Respondent, v. H. F. WEIS, and H. W. WEINEKE, as Tax Collector of San Diego County, Appellants.

TAXATION—PARAMOUNT LIEN.—The legislature has power to make the lien of taxes paramount to all other liens upon land, so that where sale is made the purchaser takes title free from encumbrance.

ID.—TITLE OF PURCHASER—LIEN OF PERSONAL PROPERTY TAX.—Under section 3717 of the Political Code, every tax due upon personal property is a lien upon the real property of the owner thereof from and after 12 o'clock, M., of the first Monday in March in each year; and in pursuance of the provisions of article XIII, section 4, of the constitution, and of sections 3716 and 3788 of that code, such lien, and

the title which a purchaser gets under a sale of the land for delinquent personal property taxes, is paramount to the lien of a mortgage which attached to the land prior to the lien of such tax.

ID.—DELINQUENT LIST—ADDITION OF PERSONAL PROPERTY TAX.—In section 3764 of the Political Code, requiring the delinquent list to contain the amount of taxes and costs due, opposite each name and description, "with the taxes due on personal property added to taxes on real estate," the word "added" does not contemplate a mathematical computation, but merely that the amount of the delinquent personal property tax be subjoined or appended to the taxes on the real estate.

ID.—TIME OF DELINQUENT SALE—REPORT TO AUDITOR.—In construing the conflict between section 3797 of the Political Code, as amended in 1891, and sections 3800, 3764, and 3768 of the same code, providing for the various steps to be taken by the tax collector for the publishing of the delinquent list, the sale for delinquent taxes, and his report to the auditor, it must be held that the date fixed by section 3797 for the tax collector's settlement with the auditor, to wit, the third Monday in June, is merely directory, and that the settlement may be had at some reasonable time after the sale, or that by clerical misprision the word "June" was inserted for the word "July"; and, so construed, a sale made on the 12th of July is valid.

APPEAL from a judgment of the Superior Court of San Diego County.    W. L. Pierce, Judge.

The facts are stated in the opinion of the court.

Sylvester Kipp, for Appellant Weis.

M. L. Ward, for Appellant Weineke.

Rippey & Nutt, for Respondent.

HENSHAW, J.—Appeal from the judgment after demurrer overruled, defendants declining to answer.

Upon March 1, 1891, the Otay Watch Company was the owner of the land in controversy.    There was at and prior to that date a mortgage upon the land, executed by the watch company to plaintiff.    For purposes of taxation in the year 1891-92 the land was assessed at $720, of which $616 was assessed upon the mortgage interest, and the remainder, $104, upon the interest of the owner, the Otay Watch Company.    There was also assessed to the Otay Watch Company, for the same year, personal property at the sum of $6,200.    The plaintiff paid its tax on its mortgage interest in said land before it became delinquent.    But the tax levied on the owner's interest, assessed at $104, as well as the tax

on its personal property, remaining unpaid, the tax collector advertised the land, together with other lands of the Otay Watch Company, the taxes upon which were unpaid in the delinquent list, and, at the foot of the list, added the following: "Personal property—valuation, $6,200; taxes, percentage, and costs, $147.-81." On the eighteenth day of May, 1892, the plaintiff acquired a sheriff's deed to said premises, upon proceedings to foreclose said mortgage against the Otay Watch Company. On July 12, 1892, the tax collector sold the land, which is the subject of the action, for the taxes, percentage, and costs against the owner's interest in said land, being $3.39, and also for the said sum of $147.81 taxes, percentage, and costs accrued upon the personal property tax. On August 30, 1893, the plaintiff tendered to the county treasurer full redemption of real estate from the sale so far as such sale proceeded upon the tax against the owner's interest; but the offer to redeem was refused on the ground that the property had been sold for the aggregate amount of such real estate and personal tax delinquency, "and that he could not therefore permit said plaintiff to redeem said real estate alone from said sale for delinquent real estate tax."

The plaintiff brings this action to quiet title, and to restrain the tax collector from executing his deed, and continues its offer to pay and redeem from the tax assessed against the owner's interest in the land.

The defendant Weis is the purchaser of the property at the tax sale, and the defendant Weineke is the tax collector of the county.

1. The appellant Weis contends that the personal property tax of $147.91, due from the watch company, became a lien upon the land in question, which lien, though subsequent in time to plaintiff's mortgage upon the same land, is superior in law; and that the tax collector's sale to enforce collection of the taxes operated to convey the land to him free from the lien of the mortgage.

Upon the part of respondent it is answered: 1. That the statutory proceedings for enforcing the collection of personal property taxes by a sale, and conveyance of land by the collector has no application to land encumbered by a mortgage, the lien of

which antedates the lien of the tax; and 2. That the lien for the personal property tax created by section 3717 of the Political Code does not extend to or include, or in any manner affect, the interest in the land which the loan and trust company, as mortgagee, had acquired prior to the time fixed by law for the taking effect of the lien for the personal property tax.

The power of the legislature to make the lien of taxes paramount to all other liens upon the land, so that when sale is made the purchaser takes title freed from encumbrance, is not questioned. "It is within the constitutional power of the legislature to enact that the purchaser at tax sales shall acquire a new, independent, and unencumbered title." (Black on Tax Titles, sec. 231.) "It is not only competent," says Judge Cooley, "for the state thus to charge the land with the tax, but the legislature may, if it shall deem it proper or necessary to do so, make the lien a first claim on the property, with precedence of all other claims and liens whatsoever, whether created by judgment, mortgage, execution, or otherwise, and whether arising before or after the assessment of the tax." (Cooley on Taxation, 445.)

Whether or not this state has done so is to be determined by its enactments.

Article XIII, section 4, of the constitution provides that, "for purposes of assessment and taxation," a mortgage shall be deemed and treated as an interest in the property affected thereby.

Section 3716 of the Political Code, treating of revenue and defining the term "real estate," declares that a mortgage, when land is pledged for the payment and discharge thereof, shall, for the purpose of assessment and taxation, be deemed and treated as an interest in the land so pledged.

Upon these provisions the respondent bases an argument which may be thus stated: The constitution and revenue laws recognize and treat a mortgage as "real estate." In any piece of land subject to a mortgage there are two separate and distinct real properties. The one is the property of the owner of the fee, which is in value the difference between the mortgage debt and the value of the land if unencumbered; the second is the real property of the mortgagee. As a tax lien can only attach to the property of the person liable for the payment thereof, delinquent taxes

which become a lien upon land affected by mortgage become a lien only upon the *quantum* of property which the holder of the legal title has in the land.    Therefore, the interest of the mortgagee is not affected by this lien, and, consequently, the lien of a pre-existing mortgage is not postponed to the lien of taxes, which become a charge only upon the interest of the owner of the fee.

But in this an unwarranted construction is given to the language of the constitution—a construction not borne out by the remaining part of section 4, nor by the legislative enactments under it.    The section itself speaks of the holder of the legal title as the owner of the property.  As further appears by it, a mortgage is to be treated as an interest in the real property which it affects, only to the end that the mortgage tax itself may become a lien upon the land.   If the constitution intended to segregate a piece of realty into such anomalous properties as counsel claim exist, and thus to make a mortgage real property and distinct from the land in which it is an interest, it would not have permitted that the mortgage tax should itself become a lien upon another's property, to wit, upon the property of the owner of the fee.    No more was intended by the provision quoted than to provide, first, for a decreased assessment upon the realty by reason of the mortgage; next, for an assessment upon the mortgage; and, finally, that the state may have security for the payment of the mortgage tax, to make the mortgage an interest in the realty to the end that the latter may be made chargeable for the tax on the former. No injustice thus results, for if the owner of the property is obliged to pay the mortgage tax it becomes a payment upon the amount of his mortgage indebtedness.

It still remains to be considered, before leaving this branch of the case, whether the legislature of this state has, in the exercise of an unquestioned power, made the lien of its taxes paramount. As this matter, the power being conceded, depends for its determination entirely upon statutory enactment, adjudications in sister states will be of little value unless based upon identical laws.

Our Political Code provides: "Sec. 3717.   Every tax due upon personal property is a lien upon the real property of the owner thereof from and after 12 o'clock M. of the first Monday in March in each year."

"Sec. 3716.    Every tax has the effect of a judgment against the person, and every lien created by this title has the force and effect of an execution duly levied against all property of the delinquent; the judgment is not satisfied nor the lien removed until the taxes are paid or the property sold for the payment thereof."

After further provisions for the sale of the real property for all such delinquent taxes, it is provided:

"Sec. 3788.    The deed conveys to the grantee the absolute title to the land described therein . . . . free of all encumbrances, except the lien for taxes which may have attached subsequent to the sale."

No distinction is made by these laws between the lien which exists upon the land for the tax on personalty and the lien which exists for the tax upon the land itself. "Every lien" created by this title remains until the taxes are paid or the property sold. The title which the purchaser gets under the enforcement of any tax lien by sale is free from all encumbrances. "A lien for taxes does not stand upon the footing of an ordinary encumbrance, and is not displaced by a sale under a pre-existing judgment or decree, unless otherwise directed by statute. It attaches to the *res* without regard to identical ownership, and when it is enforced by sale pursuant to statute the purchaser takes a valid and unimpeachable title." (*Osterberg v. Union Trust Co.,* 93 U. S. 424.)    The mandate of our statutes puts all tax liens upon the same plane; makes them all paramount to other liens, and under sale for their enforcement gives to the purchaser a title free and unencumbered.

In every case to which our attention has been directed, where the courts have made a distinction between the lien of the personal property tax upon the realty and that assessed upon the land itself, the decisions have been based upon a distinction between the two kinds of liens made by the statutes and recognized by the courts.    This is true in *Bibbins v. Clark,* 90 Iowa, 230.    The Iowa code declared in the case of a personal property tax merely that it should be a lien upon any land of the owner of the personal property, while in the case of the tax upon the land itself it declared that such tax should be "a perpetual lien against all persons except the United States and

this state." Commenting upon the fact that the provisions in the two cases were not the same, and that the difference must have been for a reason, the supreme court held that the land tax was a paramount lien, but that the tax upon personalty resulted in a lien upon the land subordinate to pre-existing encumbrances. This case will serve as an illustration of several of its kind. But it is obvious that they have no weight in this consideration when the laws of our state put all tax liens upon an equality, and make each and all superior to any other charge upon the land.

No doubt can be entertained but that this is the true and only reasonable interpretation of the effect of our code provisions.

It is held in *Eaton's Appeal*, 83 Pa. St. 152, that a statute which declares that a tax shall continue a lien "until fully paid and discharged," *ex proprio vigore* makes the lien superior to that of a judgment obtained before the tax is levied. In this state we not only have language of similar import in section 2716 of the Political Code, but that language is aided so as to remove the need of interpretation by section 3788, which provides that the deed conveys the absolute title free from all encumbrances.

2. It is further claimed by respondents that, by reason of non-compliance with section 3764 of the Political Code, the sale of the land was void at least to the extent that it did not operate as a sale for the amount of the personal property tax, and that plaintiff, as redemptioner, is not bound to redeem in the amount of the tax. The delinquent list as prepared and published contained descriptions of several distinct parcels of real estate assessed to the Otay Watch Company as owner—the value of the parcels set opposite their descriptions, and also the amount of the taxes, percentage, and costs—all as contemplated by the code. Following these matters was the statement: "Personal property, valuation, $6,200; taxes, $147.81."

Section 3764 of the Political Code declares that the list "must contain the names of the persons and the description of the property delinquent, and the amount of taxes and costs due, opposite each name and description, with the taxes due on personal property added to taxes on real estate, where the real estate is liable therefor, or the several taxes are due from the same person."

The contention is that there was no addition of the personal

tax as contemplated by the law.   But the word "added" as here
used does not contemplate a mathematical computation.   It is
employed in the sense of subjoined or appended, and the method
employed in this delinquent list is a full compliance with the
letter and purpose of the statute.   There is set forth the amount
of the delinquent personal property tax and the parcels of land
upon which it becomes a lien by operation of law, as well as the
amount of the tax levied directly upon each of those parcels.

3. The final contention of respondent is, that the sale is void
because made after the tax collector's right to sell had ceased.
This contention is based upon a statutory defect which arose
when the legislature departed from the former scheme of single
collections and provided for the payment of taxes in installments.
In so doing, in 1891 (Stats. 1891, p. 438), it amended section
3797 of the Political Code, and required the tax collector to make
his final report and turn over his delinquent list to the auditor
upon the third Monday of June in each year.   By section 3800
of the Political Code as amended, the tax collector is required to
make affidavit, indorsed upon the delinquent list, that the taxes
not marked paid have not been paid, and that he has not been
able to discover any property belonging to or in possession of the
persons liable to pay the same, whereof to collect them.

But by section 3764 of the Political Code, as amended, the de-
linquent list must be published "on or within five days before or
after the first Monday in June," and by section 3768, left un-
amended, the sale must not be less than twenty-one nor more
than twenty-eight days from the first publication.

A consideration of these provisions shows that a strict com-
pliance with them might, and in some cases would, necessitate
a final return of the lists by the tax collector before the day of
sale had arrived.   Thus the tax collector would be compelled to
make a false and stultifying affidavit that he could not collect
delinquent taxes, and knew of no property from which he could
collect them, before the day had arrived when, under the stat-
ute, he was to sell designated lands for that very purpose.   Such
was the result in the year 1892 when this land was sold.   The
tax collector, acting under the belief that the duty to sell was
paramount to the duty to report upon the day named, made his
sale and reported after the day designated by the statute.

In this his judgment was sound and his acts legal. As the tax sale could not be made until after the third Monday in June, the day upon which the tax collector was to make his affidavit and report to the auditor, it is obvious that this date is either a legislative oversight or a clerical error. For a literal interpretation leads to manifest absurdity, and would involve a declaration that the legislature demanded of a public officer the making of an affidavit whose statements would be at variance with the facts and flagrantly false. To avoid a construction so clearly against reason and right, and to give effect to the plain intent of the legislature as deduced from the revenue act as a whole, it will be concluded either that the date fixed for the tax collector's settlement with the auditor is dirctory, and that the settlement may be had at some reasonable time after the sale, or, as is probably the fact, that by clerical misprision the word "June" was inserted for the word "July," which latter would remove all difficulty and make the clashing provisions harmonious.

In doing this no violence is worked to the rules of statutory construction, so long as the interpretation arrived at is the one which the legislature must have intended. For, as is said by Endlich (Endlich on Interpretation of Statutes, sec. 295): "Where the language of a statute in its ordinary meaning and grammatical construction leads to a manifest contradiction of the apparent purpose of the enactment, or to some inconvenience or absurdity, hardship, or injustice, a construction may be put upon it which modifies the meaning of the words, and even the structure of the sentence. This is done sometimes by giving an unusual meaning to particular words; sometimes by altering their collocation; or by rejecting them altogether; or by interpolating other words; under the influence no doubt of an irresistible conviction that the legislature could not possibly have intended what its words signify, and that the modifications thus made are mere corrections of careless language and really give the true intention." These rules embrace also the correction of clerical errors by the insertion of the true word or words. (*County of Lancaster v. Frey*, 128 Pa. St. 593.)

It follows, therefore, that appellants' demurrer was improperly overruled, and that the judgment should be reversed, with directions to the trial court to sustain the same, and it is so ordered.

Harrison, J., Van Fleet, J., Garoutte, J., and Temple, J., concurred.