(No. 4951. December 3, 1928.)

THE SCOTTISH AMERICAN MORTGAGE COMPANY, LIMITED, a Corporation, Appellant, v. MINIDOKA COUNTY, a Legal Subdivision of the State of Idaho, and CLARA B. COLWELL, as County Treasurer and *Ex-Officio* Tax Collector of Minidoka County, a Legal Subdivision of the State of Idaho, Respondents.

[272 Pac. 498.]

Richards & Haga, for Appellant.

H. V. Creason, for Respondent.

BRINCK, Commissioner.—Plaintiff brought suit for injunction and to quiet title to land. It had been the owner of a mortgage given by one Davidson and wife upon lands in

Minidoka county, to secure a note for $10,500, the mortgage being executed February 7, 1919, and recorded the following day. Prior to the beginning of this action, plaintiff foreclosed the mortgage, and purchased the property at the foreclosure sale, receiving a sheriff's deed of the premises in October, 1923. It is alleged that on the second Monday of January, 1920, said Davidson was in the possession of, and claimed ownership of, migratory livestock, consisting of sheep of the approximate value of $15,000, and that during 1920 the Minidoka county assessor assessed the sheep to Davidson and entered the assessment on the personal property assessment-roll of said county; that Minidoka county was the home county of the migratory livestock, and was the county wherein said Davidson resided. It is further alleged that pursuant to said assessment, taxes for state, county, and general purposes were levied against the sheep in the sum of $279.40; that the assessor made no effort to enforce the lien of said taxes against the sheep themselves, and did not distrain or sell any of them, but permitted the same to be removed from said county, although during said year the sheep were within Minidoka county the greater portion of the time, and the taxes so levied could have been collected by distraint; that on December 5, 1920, the board of county commissioners, upon the report of the county assessor, ordered the tax upon the sheep to be, and the same was, extended against the mortgaged land upon the real property assessment-roll, without notice to plaintiff; and that plaintiff has paid and discharged all taxes levied against the land itself. It is further alleged that the defendant tax collector has given notice that she will execute a tax deed conveying the real estate involved to the county for the taxes so assessed upon said sheep. Plaintiff prays that the tax collector be enjoined from issuing the tax deed, and that it be adjudged that the said personal property tax is not a lien upon the land, and that plaintiff's title be quieted as against the lien of said tax. The trial court sustained a general demurrer to the complaint, and entered

judgment of dismissal of the action, from which judgment this appeal is taken.

It is contended by appellant that migratory livestock taxes must be collected from the migratory livestock; that there is no authority of law to enter migratory livestock taxes upon the real property roll; that the lien of such migratory livestock tax, if any there were, was inferior to the lien of plaintiff's mortgage; and that even if migratory livestock taxes can be extended upon the real property roll, all remedies by distraint and sale of the property assessed must have been previously exhausted.

The statutes involved are not entirely clear. It is provided (C. S., sec. 3097) that all real and personal property subject to assessment and taxation must be assessed with reference to its value on the second Monday of January in the year in which such taxes are levied; and that all taxes levied shall be a lien upon the property assessed, and a lien upon any other property of the owner thereof, such lien to attach as of the second Monday in January of such year, and to be discharged only by the payment, cancelation, or rebate of the taxes, as provided by law. Under this section, the amount of the taxes upon the sheep was clearly a lien upon the sheep themselves, and also a lien upon any other property of the owner, Davidson.

C. S., sec. 3098, repeats these provisions specifically as to taxes levied on personal property. Under that section, such taxes are a lien upon the real property of the owner, which shall only be discharged by the payment, cancelation, or rebate of the taxes, as provided by statute. Notwithstanding a lien is thus created, the procedure for collecting taxes is more particularly prescribed by statute.

C. S., secs. 3134 and 3135, provide for the making of a real property assessment-roll, upon which shall be extended against each tract of real property assessed the value thereof, and the value of each class of personal property whereon the tax is a lien on such real property, except migratory livestock; and under C. S., sec. 3147, that roll must, when completed, be accompanied by an affidavit of the

assessor that he has placed thereon all real property and all personal property whereon the tax is a lien on such real property, except migratory livestock.

Taxes which become delinquent upon the real property roll are collected by the issuance of a tax deed, under C. S., secs. 3256 to 3263, conveying the real property against which all of such taxes have been extended. C. S., sec. 3263, provides that such deed conveys to the grantee the absolute title to the land described therein, free of all incumbrances except any lien for taxes which may have attached subsequently to the assessment.

A separate assessment-roll, known as the personal property assessment-roll, is provided by C. S., secs. 3264 to 3284, upon which shall be entered all personal property taxes which are not a lien on real property of sufficient value, in the judgment of the assessor, to insure the collection of the tax; and C. S., sec. 3267 purported to make it the duty of the assessor to collect the tax on such personal property or to cause the taxpayer to secure the payment thereof, while C. S., sec. 3272 purported to provide that in the absence of such payment or security, the assessor must then and there distrain and sell so much of the property as might be necessary to pay the taxes, or forthwith bring suit with attachment in aid thereof for the taxes so due.

C. S., secs. 3285 to 3296, provide for the assessment of migratory livestock, and provide that the county in which it is first assessed in any year shall be considered the home county, and that taxes in that county must be either paid or the payment thereof secured before the stock may be removed from that county; that the provisions for collection, seizure, and sale, or suit, that have been made for collection of personal property entered upon the personal property assessment-roll, shall apply to migratory livestock; that migratory livestock shall be entered upon the personal property assessment-roll only, even though the taxes thereon be a lien on real property. It is further provided by C. S., sec. 3295, that all of the provisions of the chapter relating to computation of taxes and equalization of the assessment

of personal property entered upon the personal property assessment-roll, shall apply to the assessment and taxation of migratory livestock.

C. S., sec. 3304, provides that all taxes upon personal property entered upon the personal property assessment-roll, where the owners of such personal property are also the owners of real property in the county, which taxes have not been paid at the time of the annual meeting of the board of county commissioners as a board of equalization in December, and which said board finds to be a lien upon the real property, shall be certified to the county auditor and tax collector, and thereupon must be entered upon the real property assessment-roll against the real property subject to such lien.

Some of the statutes above referred to have been amended since their incorporation into the Compiled Statutes, but the amendments do not affect the matters above mentioned, with respect to the determination of this case.

We think the provision of C. S., sec. 3287, that migratory livestock shall be entered upon the personal property assessment-roll, refers only to the making up of the roll, and that the provision of C. S., sec. 3304, providing for the extension upon the real property roll of all taxes upon personal property entered on the personal property assessment-roll, when the same are a lien upon real estate, must have been intended to apply to migratory livestock taxes as well as to all other personal property taxes. C. S., sec. 3304 is unqualified, and no intention to except migratory stock taxes from its operation is indicated.

The plaintiff cannot avail itself of any default on the part of the assessor to collect the taxes out of the livestock, for the reason, if no other reason exists, that the legislature had no power to require the assessor to make the collection of the taxes. (*State v. Malcom*, 39 Ida. 185, 226 Pac. 1083.) The taxes, not having been paid, were properly extended upon the real property assessment-roll, and became a lien upon the real property owned by Davidson.

We thus come to the question of whether the lien of plaintiff's mortgage upon the land · was superior to the later lien of the tax assessed upon the livestock and fixed upon the land. That the lien of taxes upon the property assessed is superior to a pre-existing contractual incumbrance thereon, has been decided by this court in *Continental & Commercial Trust & Savings Bank v. Werner*, 36 Ida. 601, 215 Pac. 458. Was it the intention of the legislature to make such tax also a first lien upon all other property legal title to which stood in the name of the taxpayer, as distinguished from such taxpayer's interest in such property?

This question, under similar statutes, has been before many courts, and with few exceptions the courts have always so construed the statutes as to give the lien of taxes priority over senior incumbrances, if at all, only upon the property itself upon which the tax was levied.

The rule announced in the Werner case above cited, that so far as the property assessed is itself concerned, the tax levied is superior to even a pre-existing incumbrance thereon, is founded upon justice and the necessities of the state; so that while there is some question as to whether such a lien would be superior to an incumbrance existing prior to the enactment of the law granting the lien for taxes, it is held without dissent, so far as we can find, that if the statute expressly or by reasonable inference gives to the lien for taxes assessed upon any property priority over other, though senior, liens on that same property, such will be held to be the legislative intent as to incumbrances taken after the enactment of the statute; and such enactment is always upheld as within the power of the legislature. The reasons for such rule are variously stated. In *Thomas v. Jones*, 94 Va. 756, 27 S. E. 813, it is said:

"That taxes are prior in dignity to all other liens must be so from the very necessity of the case; otherwise the state would be powerless to collect her revenue. The liens on the land would, as in the case at bar, often be greater

than the value of the land, and, the tax lien being inferior, the land would escape all taxation.''

In *Morrow v. Dows*, 28 N. J. Eq. 459, in considering the question of the priority of a mortgage lien upon land over taxes assessed upon the land itself, the court said: ''It is an essential attribute of government that power should inhere in the legislature to make the taxes, without which it cannot be maintained and supported, liens on property paramount to all rights which may be acquired by the citizen. The right to establish this preference necessarily results from the right to take, by uniform laws of taxation, all such property as may be requisite to the execution of its functions. Mortgages or liens taken by the individual, after the enactment of such laws, would unquestionably be subject to be postponed to the payment of the public revenues.''

And in *Mutual Ben. Life Ins. Co. v. Siefken*, 1 Neb. (Unof.) 860, 96 N. W. 603, the court said:

''And every piece of real estate, as well as personal property, in the state, should contribute its share towards the support of the state, county, and municipality where situated. Anyone taking a mortgage, or securing a lien of any other character upon property, must take it with knowledge that such property is bound to pay its proportionate share of the taxes necessary to the maintenance of the government, and must understand that the obligation to contribute to the support of the government is something that attaches to the property itself, and that must, in the very nature of things, be superior to the lien he is about to take.''

In *Osterberg v. Union Trust Co.*, 93 U. S. 424, 23 L. ed. 964, it is said that a lien for taxes attaches to the *res* without regard to individual ownership, and when it is enforced by sale, pursuant to the statute prescribing the mode of assessing and collecting them, the purchaser takes a valid and unimpeachable title.

The foregoing decisions relate only to cases where there is involved merely the question of priority between an incumbrance upon property and a tax assessed against the

identical property. Can the principles there declared be extended so as to operate in the same way where the conflict is between an incumbrance on one piece of property and a tax assessed upon an entirely different property, the properties being related to each other only by the accident of a common ownership of the legal title?

In only a very few jurisdictions has it been held that a tax upon personal property may be made a lien upon real property of its owner, superior to pre-existing contract incumbrances. The reasoning upon which these decisions are based is not convincing. In *Albany Brewing Co. v. Meriden,* 48 Conn. 243, in so holding, the supreme court of Connecticut says with reference to such lien:

"This lien takes precedence of all others; mortgagees take their security with knowledge that the sovereignty must and will take by taxation all that is necessary to the preservation of its own life; the life of the State is of higher concern than the protection of a debt due to an individual member of it. Therefore every piece of real estate must contribute its fair proportion to the public treasury if the authorities move within a specified time and according to statutory methods; and this regardless of mortgagees or purchasers."

The fallacy of this argument lies in basing upon the ground that each piece of property must contribute its fair proportion to the public treasury, the conclusion that it must also contribute the proportion chargeable to another piece. *California Loan & Trust Co. v. Weis,* 118 Cal. 489, 50 Pac. 697, rests only upon the authorities declaring the necessity of the state to make the lien of taxes paramount to all other liens upon the property assessed. The California statute contained language similar to the provisions of C. S., secs. 3097, 3098, that the lien of taxes shall only be discharged by the payment, cancelation, or rebate of the taxes; and the court there construed such provision as giving the tax lien priority over senior liens. We think it more reasonably construed as merely excepting such lien from the operation of the statute of limitations. *Union*

*Cent. Life Ins. Co. v. Black,* 67 Utah, 268, 247 Pac. 486, 47 A. L. R. 372, follows *California Loan & Trust Co. v. Weis, supra,* and cites also the case of *Minnesota v. Central Trust Co.,* 94 Fed. 244, 36 C. C. A. 214, which merely accorded to a tax upon certain personal property a lien upon other personal property of the owner, superior to the rights of a mortgagee of all the property. The suggestion in the Utah case that failure for one year to pay the tax upon personal property gave to the mortgagee under the terms of the mortgage the right to immediately foreclose his mortgage, does not answer the objection that such delinquency for a single year might seriously impair or extinguish the mortgage lien. From this decision, two of the five justices sitting dissented. The supreme court of South Dakota, in *Minneapolis Threshing Machine Co. v. Roberts County,* 34 S. D. 498, 149 N. W. 163, L. R. A. 1915D, 886, in a case involving the priority of a lien for taxes assessed upon personal property over a pre-existing mortgage of other chattels upon which the tax lien was asserted, followed the rule and reasoning of *California Loan & Trust Co. v. Weis, supra.* Whiting, J., in dissenting from that decision, said:

"I do not believe that robbery should be committed by the state any more than by an individual, and I cannot bring myself to believe that the lawmakers of this state intended to enact a law which might bring such unconscionable wrongs upon the people of this state."

The South Dakota court reaches a different conclusion when it is sought to make the lien of personal property taxes a first lien upon real property. (*Miller v. Anderson,* 1 S. D. 539, 47 N. W. 957, 11 L. R. A. 317, *infra.*)

On the other hand, the great majority of courts considering similar statutes have held that no intent to provide that property upon which contract liens exist can be taken to the impairment of such liens for the payment of taxes assessed upon other and different property, can be ascribed to the legislature; and many of them have expressed doubts as to the power of the state to so interfere with the right of contract of the owner of the property.

In *State v. City of Newark,* 42 N. J. L. 38, at page 45, the court said:

"Without conceding that the legislature has power to make a tax on the personal property of a landowner a lien on his real estate, paramount to the encumbrance of a mortgage executed before the passage of such a law, an intention to give such tax priority in any case, should not be imputed to the law-maker, in the absence of unmistakable language to that effect, while the law, where it is clearly written, must be enforced according to its letter, however harsh and impolitic it may appear to the judicial mind; in cases of real doubt and ambiguity, the consequences of a particular interpretation may be justly regarded.

"To declare that a mortgage on land shall be subsequent and subject to all after taxes assessed upon the personal estate of the owner of the equity of redemption, differs but slightly from taking the property of one citizen to pay the debt of another. The injustice of such a proceeding would be so striking as to cast a doubt upon the correctness of the interpretation which established such a rule. A fair construction of the seventy-seventh section of the charter before cited, will not lead to that result."

In *Advance Thresher Co. v. Beck,* 21 N. D. 55, Ann. Cas. 1913B, 517, 128 N. W. 315, the appellant contended that a statute made all personal property taxes a first lien against all the world upon all personal property of the tax debtor, regardless of how or when senior liens were acquired or created. To this contention, the court replied:

"If this statute must receive the broad construction thus placed upon it by appellant's counsel, it is, to say the least, the most harsh and drastic statute upon the subject which has come to our knowledge. Giving the statute such construction, it authorizes and requires the taking of the property of one citizen to pay the debt of another. Not only this, but it renders possible the complete wiping out and destroying of contract rights. Such a statute, if thus construed, would be abhorrent to natural justice. Before such a construction can be placed upon the statute, the legis-

lative intent that it should receive such construction should be clear and unquestionable. Whether such a statute would be within the legitimate exercise of legislative power, we are not required to determine in this case, as we are agreed that the construction given the statute by appellant's counsel is not sound, and that as we continue it the same is not vulnerable to any attack upon constitutional grounds or otherwise.''

The court of appeals of Colorado, in *Gifford v. Callaway*, 8 Colo. App. 359, 46 Pac. 626, in discussing a contention that personal property taxes were by statute made a lien on realty superior to previous incumbrances, and after pointing out the power of the state to collect by distraint of the property assessed, or otherwise, says:

''So broad is this power, and so ample for the purposes of protecting the government, that it may well be doubted whether in any case personalty taxes may be charged as a lien on land. But we do not intend to express an authoritative opinion on that subject. We simply hold that where the language is not direct, positive, and specific, it cannot be held to create a lien on land for taxes which is superior to antecedent encumbrances. Such a construction would unjustly destroy the security; it would annul the most solemn contracts; it would take one man's property to pay another man's debt, for the citizen who takes the encumbrance antecedent to the levy acquires a vested interest in the property which can only be taken away from him by the exercise of some power which has been directly conferred by a legislative act.''

And the court construes the statute there involved as not giving priority to such a lien over a pre-existing incumbrance on the land.

The supreme court of South Dakota, in *Miller v. Anderson*, 1 S. D. 539, 47 N. W. 957, 11 L. R. A. 317, construing a statute providing that taxes due on any personal property shall be a lien on any real estate owned by such person, declared that the lien so created upon the real estate was not prior to pre-existing liens thereon, saying:

"The construction of this section claimed for it by respondent might, and probably would, in many cases impair, if not totally defeat, pre-existing liens taken in good faith, and in strict pursuance of the most careful business methods. A long-time mortgage, for a considerable portion of the purchase money of a farm, is taken, and such instances are not rare. It might not be unreasonable to say, as suggested in the majority opinion in the Iowa case (*New England Loan & Trust Co. v. Young*, 81 Iowa, 732, 39 N. W. 116, 46 N. W. 1103, 10 L. R. A. 478, *infra*), that the mortgagee should see to it that he has sufficient margin to protect himself against the personal property taxes of the mortgagor; but during the term of the mortgage the mortgagor may sell to another, from whom personal property taxes to a large amount may be due, and he in turn to another in the same condition, and so on, and these delinquent personal property taxes, no matter to what amount, attach at once as fast as the tax debtors take their titles as liens upon the real estate, prior and paramount to the mortgage, and possibly to its utter annihilation as security. The original owner of the farm, who took the mortgage in good faith, and with ample security for the debt it represented, is powerless to prevent these transfers, and how can he protect himself? Such a case would not, we think, be an improbable one. There are, we suppose, many pieces of real property in this state upon which are mortgages originally taken with a fair margin, but by depreciation and the accumulation of interest and taxes, the incumbrance now equals the value of the land. A tax debtor from whom is due a large amount of personal property taxes, uncollected on account of the transitory nature of the property upon which it was assessed,—property easily placed and kept out of the convenient reach of the tax collector,—has only to find such a piece, procure the title for a nominal sum, and at once his delinquent taxes give him no further trouble, for they at once become a first lien upon and the mortgaged land must pay them. But who pays them? Plainly not the tax debtor, but an absolute stranger to him and to the

indebtedness; and he is compelled to pay them solely as the result of acts of others which he could not control, and against which no human prudence could have provided. Instances like this might be rare, but they are possible under the construction claimed by respondent, and, we think, not improbable; and to quote from the dissenting opinion of Granger, J., in the Iowa case: 'Such a law could have no vindication against a single instance of such injustice.' We will not stop now to discuss the power of the legislature to enact such a law, for we do not think they have attempted to do so.''

The supreme court of Iowa, in construing a statute making personal property taxes a lien on the owner's real estate, had first held in *New England Loan & Trust Co. v. Young*, 81 Iowa, 732, 39 N. W. 116, 46 N. W. 1, 103, 10 L. R. A. 478, that the lien thus created had precedence over prior incumbrances, and the report of that decision contains a vigorous dissent by Granger, J., who says in part as follows:

''I base the proposition that the construction is against natural justice on the fact that, as a result, the property of one person may and is likely in some instances to be taken to pay the taxes or obligations of another, and any law enacted with such a purpose in view would meet with general condemnation. Let us suppose that A is the owner of forty acres of land of the value of one thousand dollars, which he sells to B, and takes back a mortgage to secure two-thirds of the purchase price. Such occurrences are usual. It is true, also, that there are persons in Iowa whose unpaid personal-property taxes will aggregate large amounts,—we may say one thousand dollars or more. I will designate C as one of them. B transfers the title of the forty acres of land to C. C has now acquired the title, and the taxes without question become a lien. The majority opinion makes them a paramount lien, and nearly seven hundred dollars of A's money or property is taken to pay the debt of C. It is said by the majority opinion 'that it is entirely within the power of those taking such securities

to protect themselves.' I fail to see how, unless A shall refuse to sell his land upon credit. If the opinion has especial reference to those who loan money, I fail to see how they are able to do so. Conceding, for argument, that they might reasonably do so, as to the mortgagor, it does not follow that the title might not be conveyed until it would rest with one whose unpaid taxes would impair, if not destroy, the security. It is not an answer to say that such instances would be rare. Such a law could have no vindication against a single instance of such injustice. While extreme cases might be unusual, those of lesser magnitude would likely be frequent. I think the effect of the majority opinion is broader and deeper than has been anticipated, and is likely, with ill effect, to visit all classes of people. The public demands for the collection of revenues are urged in support of the construction. Conceding all that the public good requires in that respect, I must deny that there is one consideration of a public nature in support of so unjust a rule. It is said in the opinion that 'it is a general principle in our system of taxation, that, when taxes are made a lien upon real estate, they become prior and superior to all mortgage or judgment liens. If that statement is made with reference to taxes upon real estate I do not question it. If made as applicable to the facts of this case, I am compelled to question its accuracy, and to insist that every adjudication upon such a state of facts known to this court announces a contrary doctrine; and I am unable to find an instance where such a rule has recognition.

"I have said that the rule announced contravenes every authority known to us on the subject."

The decision announced by the majority of the court in the case last cited, was overruled in *Bibbins v. Clark*, 90 Iowa, 230, 57 N. W. 884, 59 N. W. 290, 29 L. R. A. 278, and the statutes involved construed as not giving the priority established by the previous decision.

In *Carstens & Earles v. City of Seattle*, 84 Wash. 88 (104), Assn. Cas. 1917A, 1070, 146 Pac. 381 (387), the su-

preme court of Washington, in holding the lien of a special assessment for benefits upon lands superior to pre-existing incumbrances, comment upon the question here involved, and say that a personal property general tax is manifestly not "a pure charge *in rem* against the land, but, being a charge dependent upon the taxpayer's interest in the land, would reach no further than that; in any event, not unless the statute in the most plain and mandatory terms so provided. Indeed, the power of the Legislature to make a personal property tax a lien upon the taxpayer's land beyond his interest in the land may well be doubted."

In accordance with this principle, that court held, in *Scandinavian-American Bank v. King County,* 92 Wash. 650, 159 Pac. 786, under a statute providing that taxes assessed upon personal property shall be a lien upon all the real and personal property of the person assessed, that such taxes are a lien only upon the real estate owned by the person, and can attach only to such interest as the tax debtor may have in the property, so that it cannot have precedence over a pre-existing lien thereon.

In *Lobban v. State,* 9 Wyo. 377, 64 Pac. 82, the supreme court of that state, in response to a contention such as is made by the defendants here, said:

"The injurious consequences that would attend such a priority of the tax lien as is contended for in the case at bar must readily occur to the mind of anyone, and is fully set out in the South Dakota and Colorado cases referred to. In many instances the security of a mortgage of lands would be rendered not only unsafe, but might be entirely destroyed, by events occurring subsequent to the execution of the mortgage which could not have been reasonably anticipated. Instead of being a reliable security, a real-estate mortgage would become quite unreliable if a rule of priority should prevail, such as the collector insists on."

The supreme court of Arizona, in *Walker v. Nogales Building & Loan Assn.,* 28 Ariz. 484, 237 Pac. 1094, concedes, *arguendo,* the power of the legislature to enact a statute making a tax on one piece of property a first lien

on other property of the owner, but refuses to construe a statute of that state as having such effect; and, referring to the decisions of *California Loan & Trust Co. v. Weis, supra,* say that the provisions of the California statute—"are in important particulars unlike Arizona's, but if this were not true we are of the opinion that the construction placed upon statutes similar to those of this jurisdiction by the courts of South Dakota and Iowa are clearly correct."

It is probable that, within certain limits at least, a tax assessed upon personal property may properly be made a charge upon other personal property of the owner. Personal property is of such a transitory nature, and the expense and impracticability of resorting to each individual article of personal property for the recovery therefrom of the tax assessed against it may be so great, that, as a practical matter, the state may possibly be under the necessity of collecting all of the taxes assessed against the taxpayer's personalty, out of whatever personal property comes most readily to hand. On this question we express no opinion. In the case of *Advance Thresher Co. v. Beck,* 21 N. D. 55, Ann. Cas. 1913B, 517, 128 N. W. 315, *supra,* the court refused to lay down such a broad rule, but said:

"It is concededly proper for the Legislature to provide that taxes assessed against each class of personal property should have priority over all other liens thereon. This is in harmony with the law relating to real-estate taxes. But, as before stated, it would be grossly unjust, if not in excess of legislative power, to give to the tax lien for taxes on one class of property priority over all other liens on property of another and entirely distinct class. In the absence of a statute clearly disclosing such intent, we are unwilling to attribute such a purpose to the legislature. . . . .

"Any other construction would work manifest hardship, if not confiscation of property. As said by the Arkansas court, any other construction 'would burden personal property with secret liens to an extent to be abhorred, and would be a restraint upon the free exchange and alienation of personal property, that ought not to be drawn from the

statute, when the meaning is not clearly manifested.'
*Bridewell v. Morton,* 46 Ark. 73.''

That an unqualified power of the state under the constitution to take a mortgagee's interest in one property for a subsequent tax assessed upon another property, is at least open to doubt, appears from many of the foregoing decisions, and is evident from a consideration of the principles involved. To do so obviously restricts the freedom of contract. If an owner cannot create a lien upon his land which shall be of definite value to the lienor, and not subject to impairment or extinguishment by events the lienor cannot foresee or control, the value of the land for hypothecation is seriously diminished. Liberty includes the right to make and enforce contracts, because such right is included in the right to acquire property. (*Mathews v. People,* 202 Ill. 389, 95 Am. St. 241, 67 N. E. 28, 63 L. R. A. 73.) Freedom of contract is also within the protection of the Fourteenth Amendment to the federal constitution. (*Meyer v. Nebraska,* 262 U. S. 390, 29 A. L. R. 1446, 43 Sup. Ct. 625, 67 L. ed. 1042.)

To mortgage one's property is within the constitutional guaranty of freedom of contract. (*Dennis v. Moses,* 18 Wash. 537, 52 Pac. 333, 40 L. R. A. 302.) And the giving of mortgages is one of the most common and most necessary of ordinary commercial transactions. In so far as the state may be under the necessity of restricting such right, to enable it to collect its revenue, it has the undoubted power to do so.

''The guaranties of life, liberty and property contained in the Federal and State Constitutions are not absolute; for all private rights, however fundamental, are enjoyed by individuals as members of organized society, and subject to the paramount right of the state, the embodiment of society, to appropriate or modify them when actual necessity or the public welfare requires such a course.'' McGehee on Due Process of Law, p. 201, citing *Crowley v. Christensen,* 137 U. S. 86, 11 Sup. Ct. 13, 34 L. ed. 620; *California Reduc-*

*tion Co. v. Sanitary Reduction Works,* 199 U. S. 306, 26 Sup. Ct. 100, 50 L. ed. 204.

As we have seen, such necessity clearly exists for making the lien of taxes superior to other, though senior, liens upon the very property assessed; but, in general, it may be said that such a necessity cannot exist as to taxes assessed upon other property, because such other property can itself be taken for its share of the state's maintenance. The power of taxation in the state is in some respects analogous to the police power, and the power of eminent domain. Under any of them, private property may be taken when the general welfare demands it. As to the police power, it has been stated:

"The doctrine that the police power is a law of necessity may well be said to furnish the key to what is within and what is without the boundaries of such power . . . . " 2 Cooley's Constitutional Limitations, 8th ed., p. 1227, citing *State v. Redmon,* 134 Wis. 89, 126 Am. St. 1003, 15 Ann. Cas. 408, 114 N. W. 137, 14 L. R. A., N. S., 229.

Under the power of eminent domain, a declaration of a public use may not be palpably without reasonable foundation. (1 Lewis on Eminent Domain, 3d ed., sec. 251.) And when the necessity of the state to seize property to collect revenue assessed upon other property, is so obviously lacking as in the case at bar, if the respondent's construction of the statute were to be adopted, it may be strongly urged that a statute so construed would be beyond the power of the state, as a restriction of the freedom of contract, not justified by any need of the sovereign, and an unwarranted invasion of constitutional rights.

 It is settled law that a construction rendering a statute of doubtful constitutionality will not be adopted if another is open to the court. (*Missouri Pacific R. R. Co. v. Boone,* 270 U. S. 466, 46 Sup. Ct. 341, 70 L. ed. 688.)

The handicap the people of the state would suffer in the probable shrinkage in the supply of money available for their use, and the resulting increase in interest rates, if the law were to be construed as contended for by respondents,

is not for us to consider, except as it may argue an intention of the legislature that it be not so construed. This and the palpable injustice to both mortgagor and mortgagee—to the mortgagor in restricting his right to contract, and to the mortgagee in diminishing his security on account of matters over which he can have no control, and against which he cannot guard,—as well as what would be, to say the least, the doubtful validity of a law which must be so construed as respondents here contend, lead us to the conclusion that our statutes, as they stood at the time this case arose, should be construed as similar statutes were construed in *Scandinavian-American Bank v. King County, supra;* and that the "other property of the owner thereof," upon which taxes assessed upon personal property shall be a lien, consists only of the interest of the taxpayer remaining in such other property when the taxes on the personal property become a lien thereon. Under this rule, while the lien of taxes is the first lien upon the property assessed for such taxes, it is also a lien only upon the then existing interest of its owner in any other property, and is not superior to an incumbrance on such other property theretofore created by act of the owner.

Here, the plaintiff having foreclosed its lien, and received a deed thereunder, no interest in the land remains in Davidson, and there is nothing to convey by a tax deed based upon the assessment of his migratory stock. Its issuance would cloud the plaintiff's title, and should be enjoined if the allegations of the complaint are proven. The demurrer should have been overruled.

We do not hold that the legislature may not provide that a mortgagee, in order to preserve his priority of lien, shall give notice thereof to some officer designated by statute, as has now been provided by the legislature. (Sess. Laws 1927, chap. 233.) Nor do we hold that making the lien of a mortgage upon real estate inferior to the tax upon a small and definite amount of personal property, as was provided in said enactment, is so burdensome upon the liberty to

contract as to be invalid. These questions are not before us for decision.

The judgment should be reversed, and the cause remanded for further proceedings in accordance herewith.

Varian, C., concurs.

The foregoing is approved as the opinion of the court; the judgment is reversed and the cause remanded for further proceedings in accordance herewith. Costs to appellant.

Wm. E. Lee, C. J., and Givens and Taylor, JJ., concur.

T. Bailey Lee, J., disqualified.

BUDGE, J., Dissenting.—With all due respect to the views expressed in the majority opinion, I am unable to concur in the conclusion reached.

In October, 1923, appellant became the owner, through foreclosure and issuance of sheriff's deed, of certain real property formerly owned by one Davidson. Prior to said foreclosure proceedings, to wit, on the second Monday of January, 1920, Davidson was in possession of and claimed ownership to a large number of sheep, valued at $15,000. Davidson resided in Minidoka county, which was the home county of the sheep. The sheep were grazed in different counties but were assessed in the home county. The tax levied on the sheep was not paid and on December 5, 1920, the board of county commissioners duly ordered that such tax be extended on the real property roll to become a lien against the real property of Davidson, mortgaged to appellant. The question here presented is whether or not the tax levied against the sheep and claimed as a lien against the real property is a superior lien to that of the mortgage thereon. The tax being a personal property tax levied on migratory livestock, it is the contention of appellant that there is no authority to enter such tax upon the real property roll, and that the lien of such tax, if any there be, is inferior to the mortgage lien; and appellant further con-

tends that even if migratory livestock taxes can be extended on the real property roll, all remedies by distraint and sale of the property assessed must have been previously exhausted. Neither of these contentions, to my mind, is tenable. The following statutory provisions, in effect at the time of the assessment and levy, are controlling:

(C. S., sec. 3096.) "All property within the jurisdiction of this state, not expressly exempted, is subject to assessment and taxation."

(C. S., sec. 3098.) "All taxes levied on personal property shall be a lien upon the real property of the owner, . . . . which lien or liens attach as of the second Monday of January in the year in which such taxes are levied, and shall only be discharged by the payment, cancellation or rebate of the taxes as provided in this chapter."

(C. S., sec. 3264.) "All personal property whereon the tax is not a lien on real property of sufficient value, in the judgment of the assessor, to insure the collection of such tax, shall be entered in a separate book, to be known as the personal property assessment-roll. . . . . "

(C. S., sec. 3287.) "All migratory livestock shall be entered upon the personal property assessment-roll only, even though the taxes thereon be a lien on real property, and in all cases where the tax on migratory livestock is not a lien upon real property the lien shall exist, however, upon the migratory livestock until the taxes thereon have been paid . . . . "

If, in the judgment of the assessor, there is sufficient real property out of which the taxes assessed against personal property can be realized, and the tax on the personal property is not paid, the same may be, by order of the board of county commissioners, entered upon the real property roll and becomes a lien against the real property, under C. S., sec. 3098 which can only be discharged by payment, cancelation or rebate.

(C. S., sec. 3097.) "All real and personal property subject to assessment and taxation must be assessed at its full cash value for taxation for state, county, city, town, vil-

lage, school district and other purposes, under the provisions of this chapter, with reference to its value at 12 o'clock meridian, on the second Monday of January in the year in which such taxes are levied, and all taxes levied under the provisions of this chapter, shall be a lien upon the property assessed, *and a lien upon any other property of the owner thereof*, . . . . which several liens attach as of the second Monday in January in said year, and shall only be discharged by the payment, cancellation or rebate of the taxes as provided in this chapter.''

(C. S., sec. 3304.) ''All taxes upon personal property entered upon the personal property assessment-roll, where the owners of such personal property are also the owners of real property in the county, which have not been paid at the time of the annual meeting of the board of county commissioners, as a board of equalization, in December and which said board finds to be a lien upon the real property shall be certified to the county auditor and the tax collector and so noted opposite the entry of such property upon the personal property assessment-roll, and thereupon such taxes must be entered by the tax collector upon the real property assessment-roll against the real property subject to such lien in the columns provided for that purpose and must be charged to the tax collector by the county auditor in his account with the tax collector, as other taxes appearing upon the real property assessment-roll. The tax collector shall immediately notify the owner of any such real property by mail of any taxes on the personal property which have been so entered.''

It is clear to my mind that a fair and reasonable construction of the foregoing statutes can lead but to one conclusion, that all taxes upon personal property, whether migratory livestock or not, if not paid or collected, may be transferred to the real property roll and when so transferred become a lien against any and all real property of the owner of the personal property, and such lien is prior to any created by the act of the owner of the real property.

C. S., sec. 3212, provides:

"Each county in this state is liable to the state for the full amount of all state taxes apportioned to such county by the state board of equalization, and such taxes must be paid to the state in full, without deductions, before the second Monday in July in the succeeding year. All state taxes must be collected and paid into the county treasury and apportioned to the state fund. If, on account of uncollected taxes, there is not sufficient money in the county treasury to the credit of the state fund to pay such state taxes in full within the time prescribed by this chapter when such taxes must be paid, the same must be paid within the time prescribed therefor out of any county money in the hands of the county treasurer, and when so paid shall be charged to the state fund, but no transfer of money from any county fund to the state fund shall be made upon the books of the county auditor to county treasurer on account of any such temporary deficiency in the state fund."

C. S., sec. 3211, reads as follows:

"The board of county commissioners in each county in this state must meet on the second Monday of September in each year to ascertain the tax rate necessary to be levied on each $100 of the valuation of all the taxable property in the county for such year in order to raise the amount of state taxes apportioned to such county by the state board of equalization, and, likewise, the tax rate necessary to be levied for each of the several funds in order to meet the expenditures of such funds for the said year, and must, on or before the third Monday in September in said year, determine such tax rates and levy the same, with such percentage of increase as in the judgment of the said board may be necessary to counterbalance taxes unpaid on the second Monday of July in the succeeding year . . . . "

It will be observed from the two foregoing sections that whether taxes be collected or not, each county is liable to the state for its proportionate share thereof and must remit the same in full, and, in the event they remain unpaid the various boards of county commissioners must increase the levies to an amount sufficient to counterbalance the

taxes unpaid. Thus, if the land conveyed to appellant by sheriff's deed subsequent to the levy and extension upon the real property roll of the migratory livestock tax, a portion of which belonged to the state, be not held for the payment of the same, the taxpayers within the county, by increased levy, must make up such deficiency. I am not persuaded that it was the intention of the legislature to make a contractual obligation of the kind involved prior to the lien for taxes and in this way impose an additional burden upon the taxpayers.

Among the decisions in support of my views in this matter I cite the following: *Union Cent. Life Ins. Co. v. Black,* 67 Utah, 268, 47 A. L. R. 372, 247 Pac. 486; *California Loan & Trust Co. v. Weis,* 118 Cal. 489, 50 Pac. 697; *Tate v. Madison County,* 163 Iowa, 170, 143 N. W. 492; *Tong v. Maher,* 45 Mont. 142, 122 Pac. 279; *Porter v. Yakima County,* 77 Wash. 299, 137 Pac. 466; *People v. Evans,* 262 Ill. 235, 104 N. E. 646; *Brownell Improvement Co. v. Nixon,* 48 Ind. App. 195, 92 N. E. 693, 95 N. E. 585; *Morey Engineering & Construction Co. v. St. Louis Artificial Ice Rink Co.,* 242 Mo. 241, Ann. Cas. 1913C, 1200, 146 S. W. 1142, 40 L. R. A., N. S., 119; *Jersey City v. Montville Tp.,* 84 N. J. L. 43, 85 Atl. 838; *Delahunt v. Oklahoma County,* 226 Fed. 31, 141 C. C. A. 139.