## ERVIN et al. v. STATE OF ALABAMA.

## STATE OF ALABAMA v. ERVIN et al.
### No. 7840.

Circuit Court of Appeals, Fifth Circuit.
Nov. 22, 1935.

Rehearing Denied Jan. 11, 1936.

Rufus Creekmore, of St. Louis, Mo., and Carroll T. Prince, of Mobile, Ala., for receivers C. E. Ervin and T. M. Stevens.

A. A. Carmichael and Frontis H. Moore, both of Montgomery, Ala., for State of Alabama.

Before FOSTER, HUTCHESON, and WALKER, Circuit Judges.

HUTCHESON, Circuit Judge.

An appeal and cross-appeal, these proceedings test whether and how much the railroad company owes Alabama for taxes as a storer of gasoline, and whether the state has a lien for them superior to all other liens.

The receivers' appeal is from a finding and judgment that the railroad company was a storer of gasoline, and liable for taxes to the extent of $21,567.03 on account of gasoline stored in tanks of the railroad company in Alabama, and subsequently drawn out and used on its trains.

The state's appeal is from a judgment denying that the railroad company was a storer as to and liable for $525.96 taxes sued for on 11,647 gallons of gasoline brought into Alabama in tank cars for delivery into containers there in quantities

of approximately 20 gallons per month, and later drawn from such containers by employees for use in repairs and maintenance. The state also appeals from the finding and order that the taxes it recovered judgment for have a lien, but not one superior to all other liens on the properties of the railroad.

The case comes here on an agreed statement of facts. This shows that through the years for which the state recovered, that is, from 5/21/29 to 8/6/32 the Mobile & Ohio Railroad Company brought into Alabama in tank cars, and first stored and later withdrew them from the tanks of the company for use in its trains, 520,832 gallons of gasoline. That during that period, though the statutes of Alabama imposed excise taxes on every distributor, retail dealer or storer of gasoline "as here defined" withdrawing gasoline from storage in the state for sale or other use, the railroad company did not pay taxes on the withdrawal of this gasoline. It advanced below and it advances here, as a reason why it should not and did not do so, that it was not within the statutory definition, a storer.

Before the 1935 act which consolidated them all into one, gasoline taxes were collected under the authority of several statutes, each having substantially the same verbiage, each imposing a tax of one or two cents per gallon. The pertinent provisions of these acts (Gen.Acts Ala.1923, p. 36, Gen.Acts Ala.1927, pp. 16, 326, Gen. Acts 1931, p. 859, and Gen.Acts 1932, Ex. Sess., p. 314) are—"The term 'storer' as herein used shall include any person who ships, or causes to be shipped, gasoline into this State in tank or drum quantities and stores the same and withdraws or uses the same for any purpose." Each of these acts levied a tax of one or two cents per gallon on each and every distributor, retail dealer or storer of gasoline as herein defined, engaged in the state in selling, storing, or withdrawing gasoline for use. Each declared that the excise tax imposed shall apply to all persons storing gasoline and thereafter withdrawing it for any use. Each required all persons subject to it to make a report of all sales and withdrawals of gasoline, provided penalties for failure to keep the records or make the reports required, and provided "the tax and all penalties herein provided for shall be held as a debt payable to the State of Alabama by the person against whom the same shall be charged and all such penalties and assessments shall be a lien upon the property in this State of the party charged therewith."

It has been decided that the tax is a valid excise upon the storage of gasoline measured by the withdrawals. State v. City of Montgomery, 228 Ala. 93, 151 So. 856; Pan American Petroleum Corporation v. State of Alabama (C.C.A.) 67 F.(2d) 590. c/f Foster & Creighton Co. v. Graham, 154 Tenn. 412, 285 S.W. 570, 47 A.L. R. 971; Nashville, C. & St. L. R. Co. v. Wallace, 288 U.S. 249, 53 S.Ct. 345, 77 L. Ed. 730, 87 A.L.R. 1191; Edelman v. Boeing Air Transport, 289 U.S. 249, 53 S.Ct. 591, 77 L.Ed. 1155.

Appellants do not dispute the validity of the tax as a tax. They deny the subjection of the railroad to it on the ground that the statutory definition of a storer does not include it. The points they make here are (a) that the railroad does not ship gasoline into the state at all; that it merely brings it in on its own line, in its own cars, and (b) if it is a shipper, it is not shipping in tank quantities. The proof as to this establishes that throughout the period in question the railroad company, before bringing over its lines into Alabama the tank cars in which outside of the state it had received the gasoline, would withdraw a small portion of it. Then having in each instance somewhat less than a full tank, it would bring the gasoline in and store it in Alabama. It is their claim that though it transported in tank cars and stored gasoline there aggregating in quantity the contents of many tank cars, since no tank car transported was full it did not bring itself within the act, and is therefore not subject to pay the taxes the act imposed.

We agree with appellee that the statute, in defining storer as "one who ships," used the word "ships" not in the commercial, but in the physical sense of putting on board of a ship, vessel, or other form of transportation for carriage into the state. The railroad, in bringing the gasoline in over its own line and by the use of its own facilities without issuing papers on it, as truly shipped it as if it had consigned it to itself over its own or another line. What the statute in its definition looked to was not the means employed to transport or bring in, but the fact of transportation or bringing in.

■ Its other proposition, that it is not a storer because it did not ship in full tanks is, if anything, even less tenable, both because literally in the aggregate the gasoline it brought in and stored during the time in question was in tank quantities, and because literally too each shipment was brought in in tanks, each tank containing substantially a tank quantity. While courts may not amend a statute to accomplish a known purpose which the act as written fails to reach or ordinarily read words into it not written there, still the office of construction and interpretation obliges them to give to language used in statutes reasonable, rather than unreasonable meanings, to words used there the natural meaning their context requires. This office requires them, if possible, consistently with the language used, to construe the statute so as to accomplish rather than defeat, the purpose for which it was drawn. No one could suppose that the Legislature of Alabama intended that the tax might be completely avoided by shippers in tank quantities by the simple device of withdrawing a little of the gasoline from each tank before it crossed the state line. As written, the statute said nothing about "full" tank quantities. To give it the effect the receivers claim for it would be to write into it words not there, in order to defeat the purpose plainly intended. To construe it as the state contends, as referring to quantities of the magnitude usually transported in tank cars, cars having a rated capacity varying from 6,000 to 10,000 gallons, is to look to the purpose and intention of the statute to tax gasoline brought in in large quantities, and not to miss that purpose by giving the statute a forced and unnatural meaning. The forced meaning that whether one who actually stores gasoline falls under the tax or not depends not upon whether he is bringing large quantities of gasoline into the state for storage, but whether he brings the gasoline in in full tanks, pressed down and running over, or in tanks somewhat less than full.

There was no error in the judgment the receivers appeal from. It is affirmed.

■ As to the 11,647 gallons of gasoline involved in the state's appeal, the record does not show why the lower court denied the claim for taxes on it. The state's briefs suggest that the claim was disallowed on the ground that the amounts distributed by the supply train were so small as not to make the railroad company, as to this gasoline, a shipper in tank quantities and therefore a storer within the meaning of the act.

Whatever the ground, we think the ruling was error. If the ground was that, the state suggests, it was erroneously induced by too closely regarding the particular quantities of gasoline in a particular storage place, instead of centering the regard on the act of the storer statewide in storing gasoline, and withdrawing it from storage in Alabama. The tax in question was not intended to be, it is not, a property tax. It is an excise. It falls not upon the gasoline, but upon the act of withdrawing it from storage. It is due by one who stores and withdraws because of the act of withdrawal. If one is a storer within the meaning of the statute, that is, if he brings gasoline into the state in tank quantities for storage and withdraws it, the tax is due by him on the withdrawals of that gasoline, whether it is stored in the state in tanks or is stored there in small receptacles.

Even if then, the company had brought this gasoline into the state in the 20-gallon containers it stored it in, being by reason of its general operations a storer of gasoline within the statute, it could no more escape the excise tax on the withdrawal of these quantities than it could that on the withdrawal of larger quantities. But it did not bring it in in small containers. It brought the gasoline into the state in 6,000-gallon tanks, and from these tanks it made state-wide distribution into storage in small containers. The decree denying the tax on this gasoline was wrong. The appeal from it is sustained.

We find ourselves agreeing too with the state on the other point of its cross-appeal, that its tax lien primes all other liens.

As the matter presents itself to us on the agreed record, and as argued in the briefs, the question of priority turns on whether section 74 of the General Revenue Act of July 22, 1927[1] making taxes a superior lien, applies to taxes imposed by the gasoline taxing laws.

---

[1] "That State and counties shall have a lien superior to all other liens upon all the goods, wares, and merchandise or any other property owned by any person, firm or corporation liable for the payment of license, franchise or other taxes due to the State or County." Gen.Acts 1927, p. 186, § 74.

It is conceded that taxes are liens only when and to the extent made so by statute. Coolet on Taxation, vol. 3, §§ 1230–1240. 37 Cyc. 1143; Union Central Life Ins. Co. v. Black, 67 Utah, 268, 247 P. 486, 47 A.L.R. 372; Scottish American Mortgage Co. v. Minidoka County, 47 Idaho, 33, 272 P. 498, 65 A.L.R. 663. The receivers urge that the gasoline tax laws of 1923–1927 and 1931 imposing taxes respectively of two, two, and one cent per gallon upon gasoline, and each fixing a lien for their payment upon all property of the taxpayer, are specific statutes and deal with specific matters. That the 1927 General Revenue Act, on which the state relies, is a general statute, dealing with general matters. They insist that these special gasoline statutes exclusively fix the state's lien. That they may not be aided by reference to the Revenue Act, and that since the lien they fix is not in terms superior, the state has only a simple lien.

The special master and the District Judge agreed with this view. The state here invokes the same principle, that a special statute treating of a special subject controls over a general one in the absence of clear legislative intent to the contrary. It insists, though, that the 1927 Revenue Act, dealing with the special subject of tax liens, and specially treating them is the special statute in this case, and as such it controls all tax statutes which in a general way give liens. The receivers claim to derive support for their argument that the Legislature did not intend that the 1927 Revenue Act (Gen.Acts 1927, p. 139 et seq.) should apply to gasoline tax liens, from the 1932 gasoline taxing act (Gen. Acts 1932, Ex.Sess., p. 314), in which, imposing an additional tax of one cent per gallon, the Legislature provided that this tax should be a "superior lien." The state, on the other hand, claims that the insertion of these words in that act and in the 1935 act which consolidated all the gasoline taxing acts into one, supports its view of the state's intent to secure its gasoline taxes by a prior lien by in terms negativing the receivers' inference from the words of the other statute, that the Legislature did not so intend.

These arguments over which is the special and which the general, the gasoline taxing statutes or the Revenue Act, and whether the insertion of the provision for a prior lien in the 1932 and 1935 gasoline taxing acts proves, as the state claims, that the Legislature did, or as the receivers claim, that it did not, intend that the gasoline taxes sued for here under the former laws should be secured by a prior lien, are most interesting. They exhibit most delightfully the cause, the process, and the result of wishful thinking. In their nature, however, they are not calculated to throw much light upon the point we have for decision, for without at all convincingly pointing out why they should, the receivers and the state each vigorously maintains that entirely opposite conclusions should be drawn from the same postulates. Nor, in our view, are the matters argued material to the decision. All of the taxes sued for accrued after the passage of the 1927 Revenue Act. The provisions of that act are plain, and there being no conflict between its provisions and those of the gasoline taxing statutes in question, resort to construction or interpretation to reconcile them is unnecessary. The gasoline taxing statutes impose a tax, make it a debt of the person owing it and fix a lien on all his property to secure it. The 1927 General Revenue Act imposes no tax, but looking to and embracing all taxes imposed, declares that to secure their collection the state shall have a lien prior and superior to all other liens. Thus both statutes stand, each supporting and supplementing the other, each a harmonious part of a complete taxing system.

That part of the decree giving the state a lien, but adjudging it to be not a superior lien, was wrong. The appeal from it is sustained.

The decree will be reformed by adding to it, as of its original date, the item of $525.96 rejected below, and by providing that it is secured by a prior lien, and, as reformed, will be affirmed.